RESERVE LIFE INSURANCE CO. *v.* LUEDKE ET AL.

[No. 19,408. Filed October 23, 1961. Rehearing denied November 28, 1961.]

*Emison & Emison* and *Thomas Emison,* of Vincennes, for appellant.

*Ramsey & Ramsey, Harvey K. Ramsey, James J. Lewis, Lewis & Lewis, Floyd L. Young,* all of Vincennes, and *J. William Davidson,* of Evansville, for appellees.

MYERS, J.—This is an appeal from a judgment of the Knox Circuit Court which involves an action brought by appellee, Bessie Luedke (hereinafter referred to as plaintiff), against appellant, Reserve Life Insurance Company, to recover benefits for hospitalization and medical expenses under an insurance contract issued to her by appellant. The other appellees herein were added or permitted to join as parties in the trial court because of their possible interest in the cause.

Plaintiff filed her amended complaint on February 15, 1958, wherein she alleged the issuance of the insurance policy sued upon, her subsequent hospitalization and medical expenses, the notification of such to appellant, and appellant's denial of liability.

Appellant filed a verified answer in abatement, based upon the nonjoinder of a necessary party, alleging that the benefits sued for by plaintiff had been assigned to Boehne Hospital which, at that time, was not a party to the suit. Plaintiff demurred to this answer on the

ground that it did not state facts sufficient to abate the action. The court sustained the demurrer.

Thereafter, appellant filed a series of 54 interrogatories, certain of which plaintiff moved to strike out for stated reasons. Her motion was sustained in part. Plaintiff filed answers to the remaining interrogatories.

On July 2, 1958, appellant filed an answer in one paragraph, in compliance with Supreme Court Rule 1-3, which had the effect of a general denial and put at issue the allegations of the amended complaint. At the same time, appellant filed a motion to add new parties plaintiff, which included Rudolf H. Luedke, the alleged husband of plaintiff, the Board of Commissioners of Vanderburgh County, doing business as Boehne Hospital, and the Board of Commissioners of Knox County, doing business as Hillcrest Tuberculosis Hospital.

It was alleged that Rudolf, her husband, had paid the premium on the insurance policy and dealt with it as his own; that he had assigned the policy to Boehne Hospital by written instrument; that plaintiff had assigned in writing a portion of any recovery which might accrue to her by means of this action to Hillcrest Tuberculosis Hospital. This motion was consented to by plaintiff and sustained by the court. Summonses were ordered issued and each of the parties was served.

Thereafter, Hillcrest Tuberculosis Hospital filed a petition to be made a party plaintiff. Plaintiff objected to it being admitted as such, which objection was sustained. The Hospital was admitted as a party defendant. The Board of Commissioners of Vanderburgh County and Knox County filed "answers" as did Hillcrest Tuberculosis Hospital. In the meantime, Rudolf

was "defaulted" for his failure to appear and answer his summons.

At a pretrial conference, the following stipulation was entered into by and between the parties:

"(1) It is stipulated and agreed that the only issues to be submitted to the Jury for trial are those formed by plaintiff's amended complaint and the answer of defendant, Reserve Life Insurance Company, which puts same at issue.

"(2) It is further stipulated and agreed by the parties that in the event plaintiff recovers herein, the recovery will be subject first to the payment of plaintiff's attorneys, Ramsey & Ramsey, for their services in this cause computed pursuant to plaintiff's contract with said attorneys.

"(3) From the balance then remaining the Boehne Hospital of Evansville, Indiana, will be paid in full, to-wit: $236.40.

"(4) Any amount then remaining shall be paid to the Hillcrest Tuberculosis Hospital of Knox County, Indiana, in liquidation or part liquidation of its bill of $1,895.50.

"(5) And now upon the pleadings, to-wit, the counter-claim of Hillcrest Tuberculosis Hospital (by the Board of Commissioners of Knox County) and plaintiff's answer of said Hillcrest Tuberculosis Hospital shall have and recover from the plaintiff, Bessie Luedke, the sum of $1,895.50."

The cause then came to trial before a jury. At the close of plaintiff's evidence, appellant moved for a directed verdict, which was overruled by the court. Appellant presented its evidence, and, after plaintiff had introduced rebuttal evidence and rested, moved the court to set aside and withdraw submission of the cause to the jury. This motion was overruled. Appellant next moved for a directed verdict, which was likewise overruled. Instructions were tendered by the parties. The court gave eleven instructions to the jury, only one of which was objected to by appellant.

The jury found in favor of plaintiff and rendered a verdict that she recover from appellant the sum of $1,788.50. Judgment was entered accordingly.

Appellant's motion for new trial specified error in that the verdict was not sustained by sufficient evidence and was contrary to law; that there was irregularity in the proceedings wherein the court sustained plaintiff's demurrer to appellant's answer in abatement and sustained plaintiff's motion to strike out certain interrogatories; that error of law occurred at the trial due to the court's rulings on objections to certain designated questions and answers given by witnesses during interrogation; that the court erred in overruling the various motions submitted by appellant during and after trial as to directed verdict and the withdrawal of submission of the cause to the jury.

The motion for new trial was overruled and this appeal followed. The assignment of errors is based primarily upon the overruling of the motion for new trial, other grounds set forth in the assignment being incorporated in that motion.

Appellant argues that it was error for the trial court to sustain plaintiff's demurrer to the answer in abatement. This was predicated upon the fact that certain assignments of the policy had been made to Boehne and Hillcrest Hospitals which did not appear in the allegations of the amended complaint, one of which assignments had been executed by plaintiff's husband, Rudolf. Appellant claims they were necessary parties to the action, and without them appellant is in the position of being subjected to multiple liability on one claim.

The argument fails for two reasons. First, assuming there was error in sustaining the demurrer, it was cured by appellant's action in bringing in all the parties it claimed were necessary plaintiffs to the lawsuit by motion. It is a general rule that

a defect of parties plaintiff may be cured by joinder of the missing plaintiffs. 67 C. J. S., Parties, §123, p. 1125. Second, the stipulation at the pretrial conference had the effect of determining the rights of all the parties in the event of recovery by plaintiff, thus protecting appellant from a multiplicity of suits and from multiple liability.

Appellant's argument as set forth in its brief states that:

"... any other partial owners of appellee's claim are properly aligned with her in interest and against appellant. They should have come into the record on plaintiff's side, as appellant requested, and not identified as defendants, as appellee requested and obtained."

It is to be noted that appellant's motion to add new parties requested that they be added as parties plaintiff. Included among them was the Board of Commissioners of Knox County, Indiana, doing business as Hillcrest Tuberculosis Hospital. There was no objection to this by plaintiff and the court granted the motion. Later, Hillcrest Hospital, by its attorney, volunteered to come in as a party plaintiff. This was objected to by plaintiff, which objection was sustained by the court, and the court admitted it as a party defendant. This seeming contradiction was not resolved in the trial, nor was there any attempt made by either party to determine whether Hillcrest Hospital, by its attorney, or the Board of Commissioners of Knox County, doing business as Hillcrest Hospital, was the proper party to represent the Hospital.

Appellant next assigns as error the court's ruling in sustaining plaintiff's motion to strike out certain interrogatories. To quote from appellant's brief:

> "Each of the interrogatories stricken was designed to discover facts on the issue of ownership of the insurance contract sued upon."

However, at the time the interrogatories were filed, the only pleading before the court was plaintiff's amended complaint. There was no other pleading on file putting into controversy the ownership of the policy. It is possible that appellant could have done so by appropriate pleading, but did not choose to do so.

The pertinent part of the statute permitting the use of interrogatories reads as follows:

> "Either party may propound interrogatories, . . . *relevant to the matter in controversy,* and require the opposite party to answer the same under oath. . . ." (Our emphasis.) Burns' Ind. Stat., §2-1028, 1946 Replacement.

The amended complaint stated in general that plaintiff was entitled to hospitalization payments, and that, by reason of appellant's failure to pay them, she had been damaged. There was no other pleading on file challenging ownership of the policy. We do not see how the interrogatories referred to would have been relevant to the matter in controversy at the time they were filed, or at any other time for that matter, in view of the stipulation wherein it was agreed that the only issues to be submitted to the jury were those formed by plaintiff's amended complaint and the answer of appellant. This, in itself, eliminated the question of ownership of the policy. Appellant asks: "How would appellee have been harmed by being required to answer the stricken interrogatories?" The answer is by another question: How was appellant harmed by plaintiff's failure to answer them? We find no harm to either party, and so the court did not commit error by striking them from the record.

Appellant contends that plaintiff had the burden of proof; that she failed to discharge that burden; that therefore the verdict was not sustained by sufficient evidence; and that the court erred at the close of plaintiff's evidence in not directing a verdict.

We shall not consider the specification that the court erred in overruling appellant's motion for a directed verdict at the close of plaintiff's evidence, as such assignment of error was waived by the introduction of evidence thereafter by appellant on its own behalf. *Trent* v. *Rodgers* (1952), 123 Ind. App. 139, 104 N. E. 2d 759.

Appellant further contends that the only competent evidence on the sole factual issue in dispute was clear and positive against plaintiff, and, consequently, the verdict was contrary to law, and the court erred at the close of the evidence in not directing a verdict for appellant.

When the sufficiency of the evidence is questioned on appeal, this court will not weigh the evidence, but will examine the record to see if there is any evidence of probative value, or any reasonable or logical inference which may be drawn therefrom, which could be believed by the jury and would sustain the verdict. *Gamble* v. *Lewis* (1949), 227 Ind. 455, 85 N. E. 2d 629; *Watson* v. *Watson* (1952), 231 Ind. 385, 108 N. E. 2d 893.

The record, when considered most favorable to plaintiff, and with every reasonable inference therefrom, discloses that on September 19, 1952, appellant issued a policy of insurance, known as a Hospital and Surgical Expense Policy, to plaintiff as the insured. It was a Family Group Policy on account of the insured and dependent members of her family. The only other per-

son named in the policy was her son, Rudolf W. Luedke, aged 8 years.

A woman by the name of Etna Marsh was an agent for appellant Company. She visited plaintiff in her home on September 16, 1952, and sold her the policy. There, plaintiff filled out and signed the application for the insurance. At the time, plaintiff was hesitant about taking out the policy for the reason that for a number of years previously she had periodically gone to Hillcrest Hospital to have X-rays taken of her lungs. She told this to the agent, but also said that she had no knowledge during that time that she had tuberculosis. The agent said that the chest condition would make no difference so long as the policy was prepaid. Plaintiff considered herself in good health when this took place.

Plaintiff's sister was present when the application for the policy was signed. She testified that plaintiff told the agent concerning the X-rays of her lungs, but that she "had never had a positive test at all as far as tuberculosis was concerned." When the sister was asked what the agent's response to that statement was, she replied: "She [the agent] said she was sure the policy would be accepted and that it would be a payable policy should she break down after the policy became so old."

The policy became effective September 19, 1952, and was kept in force until about three months before the trial of the cause, which commenced June 3, 1959.

On December 27, 1956, the plaintiff was admitted to Boehne Hospital in Evansville, Indiana, where she remained until February 1, 1957. From there she went directly to Hillcrest Hospital, where she was a patient until October 16, 1957. While she was in Boehne Hospital, she made a claim against appellant. In May, 1957, she was advised that appellant was denying liability

on the ground that the sickness for which plaintiff was confined was not within the coverage of the policy.

Appellant admits without qualification that the policy was issued to plaintiff; that she had been sick; that her sickness was pulmonary tuberculosis; that she had been hospitalized and incurred expenses as a result thereof; that her compensable expenses, if liability existed, amounted to $1,788.50. Appellant has gone further in admitting that plaintiff did not know she had tuberculosis at the time she took out the policy; that she acted in good-faith; that she was entirely innocent of any fraud. Its case is based upon the contention that the evidence reveals the cause of sickness, i.e., the pulmonary tuberculosis, originated years before the policy was in force, and, accordingly, under the terms of the policy, it was not liable therefor. The specific provision states that appellant would pay expenses of hospital confinement resulting from sickness, the cause of which originated while the policy was in force and more than fifteen days after the date thereof.

However, the evidence is conflicting as to the time of origin of the disease. Appellant has admitted that plaintiff did not know she had tuberculosis when she signed the application for insurance. This is quite apparent in considering her own testimony, and the fact that she denied that she had the disease when she signed the application. In her written claim for benefits, she states that she first noticed the symptoms of a deep cold and was beginning to get sick on May 28, 1955; that she went to see a doctor in June of that year. In the same claim form, Dr. Paul D. Crimm of Boehne Hospital states that the diagnosis and cause of her condition was active pulmonary tuberculosis, *which, in his opinion, originated about June, 1955.*

Appellant presented two medical witnesses, Dr. Frank Stewart, Superintendent of Hillcrest Hospital, and Dr. Bart Corsentino, a radiologist. Dr. Stewart treated her during her confinement at Hillcrest. He identified a series of 45 X-ray photographs, commencing in June, 1940, and running through February 5, 1959, as being X-rays of the plaintiff. He marked on the appropriate X-rays taken in 1957 when she was a patient, the condition for which plaintiff was confined at his hospital, and testified that the condition was tuberculosis. However, he said that after examining all of her records, including the X-rays, he could not "pin it down definitely" that she had tuberculosis until he received a specimen and report of tubercular bacillus from her sputum, which came from the laboratory of the Indiana State Board of Health on September 22, 1955.

Dr. Corsentino, who was called as an expert, examined the X-rays and stated that as far back as 1946 there were shadows or abnormalities shown on the lungs, and that "the most likely diagnosis suggested would be tuberculosis." Immediately thereafter, he made this statement:

"However, there are other things that could cause this appearance, early cancer of the lung, early benign tumor, you can have fungus infection, virus pneumonia."

The evidence concerning the question as to whether plaintiff had tuberculosis prior to the issuance of the policy was a matter of fact for the jury to determine, and the trial court committed no error in overruling appellant's motion for directed verdict at the close of all the evidence.

Appellant next assigns as error the overruling of its written and verbal motions to set aside and withdraw the submission of the cause to the jury. This is based

upon a claim of error at law occurring at the trial, which is raised in the motion for new trial, concerning certain answers to questions asked of plaintiff and her sister allowed by the court over objection during rebuttal evidence. The subject-matter involved the conversation between plaintiff and the agent at the time the application was signed, wherein plaintiff testified that she told the agent of having previous X-rays taken of her chest; that she inquired of the agent whether she was eligible to take out the policy; that the agent responded that it would make no difference so long as the policy was prepaid.

Appellant claims that this was not proper rebuttal evidence since it tended to prove that appellant was guilty of conscious fraud; that appellant had orally amended the written contract of insurance; that plaintiff was not guilty of fraud; that it suggested to the jury that it was free to reform the written contract of insurance.

We do not see how the admission of this conversation would have indicated any proof or inference of reformation of the policy, or of any fraud on the part of either appellant or plaintiff. This is particularly true as to the latter, since appellant has affirmatively admitted that plaintiff acted in good-faith and without fraudulent intent.

When plaintiff was presenting her case in chief, the subject of her conversation with the agent concerning her eligibility to take out the policy was presented to the court and ruled out by objection upon the part of appellant. This objection was sustained as being anticipatory of a defense. In presenting its case, appellant introduced the X-rays of plaintiff which had been taken throughout the years, including those prior to the issuance of the policy.

Plaintiff had the right on rebuttal to give her version and explanation of the X-rays and to show that she believed she was in good health at the time. Where evidence on a certain issue is introduced by one party, and it appears likely that the other party will be prejudiced unless he is permitted to introduce contradictory or explanatory evidence, such evidence should be admitted. *Lyon* v. *Aetna Life Insurance Company* (1943), 112 Ind. App. 573, 44 N. E. 2d 186; 12 West's Indiana Law Encyclopedia, Evidence, ch. 3, §54, p. 486. This was proper rebuttal evidence and there was no error in admitting it.

Finally, appellant argues that it was error for the court to have given its Instruction No. 6. This reads as follows:

> "The defendant has offered some evidence calculated to show that the plaintiff failed to give timely notice of claim under the policy required by the policy. I instruct you on that point that the notice given the defendant Company is not subject to the infirmity urged against it as aforesaid. Therefore you would not be authorized to find against the plaintiff solely on the ground that the notice was not timely filed as required by the policy."

The objection presented in general is on the ground that it improperly withdrew an issue of defense from the consideration of the jury, and that appellant was deprived of its statutory rights set forth in Burns' Ind. Stat. §39-4306 (g), 1952 Replacement. This section provides as follows:

> "The acknowledgment by an insurer of the receipt of notice given under any policy covered by this section, or the furnishing of forms for filing proof of loss, or the acceptance of such proofs, or the investigation of any claims thereunder shall not operate as a waiver of any of the rights of the

insurer in defense of any claim arising under such policy."

Paragraph 4 of the Standard Provisions of the policy, which complied with then existing statutory requirements, provided as follows:

"Written notice of injury or of sickness on which claim may be based must be given to the Company within twenty days after the date of the accident causing such injury or within ten days after the commencement of disability from such sickness." Burns' Ind. Stat., §39-4306 (c) (4) (C) :4, 1952 Replacement.

Appellant argues that plaintiff's amended complaint alleges in Paragraph 8 thereof that: "Pursuant to the terms of said policy and before bringing this action, Plaintiff notified Defendant of her claims under said policy. . . ." At the trial, appellant says that plaintiff testified she had not notified appellant according to the terms of the policy; that appellant was entitled to notice on or before January 6, 1957; that the notice was not received by appellant until January 15, 1957; that appellant did not repudiate its contract with plaintiff; that, pursuant to Burns' Ind. Stat., §39-4306 (g), 1952 Replacement, it did not waive its rights to defend its claim for failure to give the required notice within the ten-day period.

The record reveals that after plaintiff was hospitalized on December 27, 1956, she requested her husband to bring her some claim forms. She received them on January 2, 1957. She stated that she sent the forms to the main office of the hospital; that the secretary brought them up to her, where she filled in her part and sent them back to the office with the secretary; that she could not remember whether or not the doctor had filled in his part of the form. There was no

date above her signature. There was a date on the doctor's side of the form, being January 14, 1957. In answering the questions directed to him, he stated that she was operated on for induction of pneumoperitoneum on January 12, 1957. There was evidence that the completed form was received at appellant's regional office in Cincinnati on January 15, 1957.

On January 31, 1957, appellant sent a letter addressed to plaintiff at her home in Vincennes, Indiana, which commenced as follows:

> "Dear Mrs. Luedke:
> "You probably wonder why you have not heard from us since you have sent us the required forms."

It then went on to say that it was necessary to write the hospital or doctor to correctly interpret the medical report, and that such had been done in her case. Her cooperation was requested.

On May 22, 1957, appellant notified plaintiff by letter that it could not pay her claim because her tubercular condition pre-existed the insurance contract. No mention was made that her claim was not filed in time. It was not until the day of trial, over two years later, that appellant raised objection as to the time in which the claim was filed.

Paragraph 5 of the Standard Provisions of the policy complied with the statutory requirement then in existence, being Burns' Ind. Stat., §39-4306 (c) 5, 1952 Replacement, and provided as follows:

> "Such notice given by or in behalf of the insured or beneficiary, as the case may be, to the Company at Dallas, Texas, or to any authorized agent of the Company, with particulars sufficient to identify the insured, shall be deemed to be notice to the Company. Failure to give notice within the time provided in this policy shall not invalidate any claim if it shall be shown not to have been reason-

ably possible to give such notice and that notice was given as soon as was reasonably possible."

It must be remembered that plaintiff was sick and bedridden. There was no dispute concerning this. In such a situation it cannot be presumed that she was competent and able to follow up the mailing of a notice. Persons in her condition must rely on some one else to act for them. We think that paragraph 5 of the Standard Provisions was incorporated in the policy for just such circumstances as these. There was no denial that the notice was received by appellant. In fact, it was affirmatively stated that the required forms had been received in the letter of January 31, 1957. There was no conflict as to the facts of plaintiff's condition and the receipt of the forms by appellant after the ten-day period. Therefore, without going into the question of waiver, estoppel or laches, we think the court could have found as a matter of law that the notice was given pursuant to Standard Provision 5 of the policy.

Section 39-4306 (g) was not violated by the plaintiff. Assuming that plaintiff should have pleaded the particular circumstances constituting the excuse of impossibility, *Hanover Fire Ins. Co.* v. *Johnson* (1901), 26 Ind. App. 122, 57 N. E. 277, there was sufficient proof of this made at the time of trial. Although the complaint was not amended to conform to the proof of such excuse, it is a rule that defective pleadings which might have been amended in the court below, are deemed amended on appeal. *Esch* v. *Leitheiser* (1947), 117 Ind. App. 338, 349, 69 N. E. 2d 760; Flanagan, Wiltrout and Hamilton, *Indiana Trial and Appellate Practice*, §2785, p. 366, Comment 3, and cases therein cited. The court committed no error in giving Instruction No. 6.

Judgment affirmed.

Ryan, P. J., and Ax and Cooper, JJ., concur.

NOTE.—Reported in 177 N. E. 2d 482.