### BRINDLE *v.* HARTER.

[No. 20,082. Filed November 16, 1965. Rehearing denied January 6, 1966. Transfer denied April 26, 1966.]

*Chester E. Bowman, Jerrald A. Crowell,* and *Bowman & Crowell,* of Fort Wayne, for appellant.

*William F. McNagny, Mentor Kraus, J. A. Bruggeman,* and *Barrett, Barrett & McNagny,* of Fort Wayne, for appellee.

PRIME, P. J.—Appellant instituted this action below to recover damages for personal injuries allegedly sustained as a result of a collision between an automobile driven by appellant, Edwin D. Brindle, and one operated by appellee, Robert Lee Harter. Trial was had by jury which returned a verdict for the appellee. Appellant then filed a motion for a new trial which was subsequently overruled.

This appeal followed in which the assignment of error was the overruling of said motion. The specifications of the motion were numerous, but we find it necessary to rule only upon appellant's contention that the court erred in overruling the objections of the appellant following a series of questions propounded by the appellee during the cross-examination of a witness called on behalf of the appellant.

The evidence discloses that appellant's automobile, while stopped at an intersection for a traffic light, was struck in the rear by appellee's automobile, which apparently skidded and was unable to come to a safe stop on the rain slick road surface.

During the course of appellant's direct examination of one Clifford Knowles, a supervisor at appellant's place of employment, the appellant's attorney, after asking the witness various questions pertaining to appellant's duties, hours worked and absenteeism record, put forth the following questions:

"Q. Are you acquainted with the employee-employer contract, the wage contract out there?

"A. Yes, sir.

"Q. Are you acquainted with the retirement plan the company has of (for) the employees?

"A. Yes.

"Q. What is the retirement age of the employees?

"A. 65.

"Q. And is that based upon age alone?

"A. No. It is based upon years of service and age.

"Q. Now, can an employee, though, retire before he is 65?

"A. Yes. I believe there is a stipulation in the contract should he become permanently disabled that he will be retired at the reduced rate.

The appellee followed with cross-examination of the above witness, and, after deleting several preliminary questions, we have set out below the pertinent questions to which we feel sufficient objection was made:

"Q. In other words, there is no reason financially why a person who is injured while working at Perfection, I don't care where he is injured there is no reason why he can't go to a hospital if he wants to and have the bill largely picked up by Perfection, is there?

*Mr. Crowell:* Your honor, we are going to object to this line of questioning at this time. There was nothing gone into like this on direct examination.

*The Court:* Overruled and exception. You undertook to show when they could retire, what age, and so on. I think you have opened the whole contract up.

"A. I would say there is no question about it being true.

"Q. Furthermore, while a person is off work for injuries he may have received by falling off a ladder at home, the company pays him a weekly sum, does it not. Not his full wages, I am not saying that, but during the period he is off work for any reason connected with an accident or any other injuries the company pays him a weekly sum?

"A. No, sir, I don't believe so.

"Q. Well, isn't it a fact that during the period that Mr. Brindle was off, this seven weeks he wasn't working at Perfection, the company paid him $235.00 on top of his medical bills?

*Mr. Crowell:* Your Honor, we are going to object to this line of questioning. We talked about one thing, retirement age, and now we are talking about medical bills and talking about a specific instance.

*Mr. McNagny:* This has more to do with the accident than the man's retirement age. He is only 40 years old.

*Mr. Crowell:* I don't know, due to the fact we are alleging personal liability.

*The Court:* Objection overruled and exception.

*Mr. Crowell:* Your Honor, could the record show an objection to all this line of questioning?

*The Court:* Yes. You may show an objection but the plaintiff's attorney on direct examination opened up the question of the union contract as to the number of hours when overtime should be paid, the retirement age and so on, and the court overrules the objection for the reason that you can't put part of a contract in evidence without putting the entire contract in. The court feels the door has been opened.

(The preceding question was read by the reporter: "Well, isn't it a fact that during the period that Mr. Brindle was off, this seven weeks he wasn't working at Perfection, the company paid him $235.00 on top of his medical bills?")

*Mr. Crowell:* Show our objection.

*The Court:* The same objection and same ruling to each question propounded by the attorney for the defendant concerning this matter.

"A.  No, sir. I don't know anything.

"Q.  Are you aware that on his total medical bills, hospital bills, on all his bills of every kind and character, which amount to approximately eight hundred dollars, the company has paid over $623.00?

"A.  I can't answer that. I don't know.

"Q.  You are not denying that could be correct, are you?

"A.  I don't know, sir.

"Q.  You know that there is such a plan that would take care of that?

"A.  I know that they have a plan. Ours is separate from the one that they have and I am not really too familiar with their plan."

Appellant contends that the questions propounded on cross-examination went beyond the scope of direct examination. It appears from the record, as shown above, that the justification for admitting the testimony was that it pertained to the same general employee benefit con-

tract as did retirement benefits, which were questioned on direct examination by the appellant. Upon examining the record we can find no evidence to indicate that there was in fact but one single contract of employee benefits at Perfection. However, this fact alone would hardly seem sufficient grounds upon which to base a reversal. We feel, therefore, the necessity to look further into the previous holdings in this area. We realize that the vast majority of the cases reported—far too numerous to be cited—hold that the admission or exclusion of testimony on cross-examination is left to the discretion of the trial court, and will be overturned only upon a clear abuse of that discretion. It must also be admitted that after a lengthy search of the cases none has been found that give a clear definition of what factors are necessary to constitute such an abuse.

We have therefore attempted to seek out such guidelines as do appear and apply them to the facts of the instant case.

It is the law that where the direct examination of a witness opens a general subject, cross-examination may go into any phase of that subject which tends to *modify, explain, or rebut the statements made on direct examination.* *Essex* v. *Millikan* (1928), 88 Ind. App. 399, 164 N. E. 284; 30 I. L. E., Witnesses, § 113, p. 105; 20 Am. Jur., Evid., § 275, p. 262; *Dotterer* v. *State* (1909), 172 Ind. 357, 88 N. E. 689. "The cross-examination of a witness should not be extended to *irrelevant, collateral,* or *immaterial* matters. . . ." 30 I. L. E., Witnesses, § 122, p. 119. (Emphasis added.) And in *Westfall* v. *Wait* (1905), 165 Ind. 353, 73 N. E. 1089, the court said:

"It will not be necessary in this case to determine whether the cross-examination exceeded proper limits, inasmuch as that fact, upon the evidence elicited, would not constitute reversible error. Appellees were entitled to make these witnesses their own, and *to prove upon direct examinations all the facts brought out upon cross-examination* and objected to by appellant. . . ." (Emphasis added)

Going further, we find in *Rariden* v. *State* (1962), 242 Ind. 689, 703, 177 N. E. 2d 736:

"... and where it does not appear that the situation would be changed by the elicited testimony, nor the *attitude of the jury be affected* by the answer sought, it is in the sound discretion of the trial court as to what extent the cross-examination will be allowed. . . ." (Emphasis added)

A large number of cases have held that even error in the admission or exclusion of testimony on cross-examination will not be grounds for reversal, *barring prejudice to the complaining party*. *Farley* v. *State* (1962), 243 Ind. 445, 185 N. E. 2d 414; *Barker* v. *State* (1957), 238 Ind. 271, 150 N. E. 2d 680; *Kelley* v. *State* (1948), 226 Ind. 148, 78 N. E. 2d 547. And finally, in *Walker* v. *State* (1924), 194 Ind. 402, 405, 142 N. E. 16, it was held:

"With reference to the cross-examination of which complaint is made, it is clear from anything here shown that it had reference to matters entirely irrelevant and therefore improper from any point of view. But, is the error one justifying us in reversing the judgment? Appellant was found guilty on each of four counts . . .

*"In view of the entire evidence and the judgment as finally rendered* in this case, we are well convinced that a retrial would not result more favorably to appellant. Assuming as we may, that the judgment rests upon the good counts and not upon the bad *(Wallace* v. *State* [1920], 189 Ind. 562), and it affirmatively appearing from the record to our entire satisfaction that the erroneous evidence admitted upon cross-examination of appellant exerted no special influence over the verdict of the jury or was otherwise prejudicial to the rights of appellant, but that, in reality, a fair and impartial trial was had and a just conclusion reached a reversal of the judgment under these circumstances ought not to follow. . . ." (Emphasis added)

In view of the above, therefore, it appears that as a general rule of law in this state evidence erroneously admitted upon cross-examination, to constitute reversible error, must have been of the character which could not have been proven by the examiner in direct examination, it must

be of a type which could affect the attitude of the jury or prejudice the complaining party; and there must appear the possibility that in view of all evidence presented the erroneously admitted evidence could have affected the final verdict.

It now remains only to decide if the facts of the instant case fall within the above stated proposition. It is an accepted rule that evidence of benefits received by, or financial standing of, plaintiff cannot be introduced by the defendant in mitigation of damages. *Cincinnati, etc., R. Co.* v. *McCullom* (1915), 183 Ind. 556, 109 N. E. 206; *Pittsburgh, etc., R. Co.* v. *Bir* (1914), 56 Ind. App. 598, 105 N. E. 921; *Citizens Gas, etc., Co.* v. *Whipple* (1904), 32 Ind. App. 203, 69 N. E. 557. In order to determine if the questioned testimony would be considered prejudicial or be of the type calculated to affect the jury, we must draw analogies from the language of cases in which evidence of the defendant's liability insurance was introduced. It was held in *J. C. Penney, Inc.* v. *Kellermeyer* (1939), 107 Ind. App. 253, 265, 19 N. E. 2d 882, 22 N. E. 2d 899:

> "Whether or not such insurance was carried by the appellant could not in the slightest manner affect the question of the appellant's negligence charged in the complaint. Persistent efforts in this field of evidence which tend only to confuse and possibly prejudice the jury *are usually regarded as prejudicial requiring a reversal.*" (Emphasis added)

Appellee has also stated in his brief that since the jury found no negligence on the part of the defendant, the admitted testimony, even if erroneous could not constitute grounds for reversal as it could affect only the amount of damages involved and would not be considered as a factor in determining the question of negligence. We disagree with this proposition and cite as controlling the following language regarding a somewhat similar situation found at 77 A. L. R. 2d 1156:

"Generally, it has been held to constitute error, requiring a reversal or new trial, to bring to the jury's attention the fact that the plaintiff in a personal injury or death action is entitled to workmen's compensation benefits. The courts have reasoned that such information would tend to prejudice the jury and influence their verdict, *either* as to *liability or damages . . .*" (Emphasis added)

In view of the above we feel justified in stating that the evidence admitted in this case was immaterial, improper and highly prejudicial. We need now only decide if any good purpose would be achieved by reversal. Was there such a preponderance of evidence in favor of the verdict as to make reversal a useless thing, in that a new trial would necessarily have the same result as before? We think not. After a careful reading of the record we find nothing in evidence which would require us to believe that, without the erroneous testimony the verdict would necessarily remain as before.

Reversed and remanded for new trial.

Carson, Faulconer, and Wickens, JJ., concur.

NOTE.—Reported in 211 N. E. 2d 513.