JACKSON *v.* BEARD.

[No. 769A133. Filed March 9, 1970.]

*William F. McNagny* and *Robert Thompson, Barrett, Barrett & McNagny,* Fort Wayne, for appellant.

*Thomas W. Yoder* and *Edward L. Murphy, Jr., Livingston, Dildine, Haynie & Yoder,* Fort Wayne, for appellee.

LOWDERMILK, C.J.—Appellee herein, plaintiff below, Howard J. Beard, commenced his action against appellant, defendant below, Edward C. Jackson, charging in his complaint that on August 21, 1964, appellee was the owner of a 1955 Plymouth four-door sedan, which he was operating on the streets of Fort Wayne, Indiana, and that he brought his said automobile to a stop on Washington Street, on the west side of the intersection of Clinton and Washington Streets, behind a line of waiting motor vehicles stopped for traffic to clear. Traffic cleared and proceeded through the intersection of Calhoun and Washington, and the appellant drove his 1962 Plymouth two-door sedan into the rear of appellee's automobile, precipitating a collision and driving appellee's motor vehicle forward and into and against the motor vehicle stopped ahead of appellee. Said complaint alleged that the appellant was guilty of negligence which was the sole proximate cause of the appellee's injuries, as follows: Failing to maintain a proper lookout, failing to apply his brakes in sufficient time to avoid striking appellee's motor vehicle, failing to keep his motor vehicle under control, in that he drove at an excessive speed of 20 miles per hour under the circumstances, failing to operate his motor vehicle at an appropriate reduced speed while approaching the intersection of Washington and Calhoun Streets, following appellee's motor vehicle too closely, and that as a proximate result of appellant's negligence, appellee was injured, sustaining a whiplash injury to the neck and aggravation of a pre-existing arthritic condition. The complaint further alleged that appellee had medical expenses of $240.44 and that his injuries were permanent, and that he was unable to work consistently at his occupation of farming, as a result of which he lost approximately $3,000 in earnings during the years 1964 and 1965 and that he would be unable to work full time at his occupation in the future.

Appellee further alleged that his automobile was a total loss and the damage to it was $200, and he sought overall relief of $45,000.

Appellant filed his answer under Supreme Court Rule 1-3A, which amounts to a denial of all of appellee's allegations.

The case was tried to a jury, which returned its verdict for the appellee and against the appellant in the amount of $10,000, upon which judgment was timely entered by the court.

Appellant subsequently filed his motion for a new trial, which is in the words and figures as follows, to-wit:

"The defendant in the above entitled cause moves the court for a new trial herein on each of the following grounds:

"1. Damages assessed are excessive.

"2. Error in the assessment of the amount of recovery in this that the amount is too large.

"3. Error of law occurring at the trial as follows:

"(a) The court erred in sustaining the objection of the plaintiff to the question hereinafter set forth propounded by the defendant during the direct examination of Howard J. Beard, plaintiff herein, witness called on behalf of the plaintiff who was questioned by defendant's attorney:

"Mr. McNagny: 'Let me ask you this, are you, when you got to be 65, were you eligible for social security.'

"Mr. Yoder: 'We object, Your Honor, for the reason that any benefits coming to Mr. Beard from some third source or evidence as to his financial standing is not admissible and Mr. McNagny knows that. This is the matter we were through in the chambers this morning. This is not admissible evidence and I am objecting on that ground. The case is *Brindle versus Harter.*'

"Mr. McNagny: 'As the court very well knows as we also discussed in the chambers, Your Honor, we might say that the court said that if the evidence is relevant and has a bearing on why he cut back on his income, or why he cut back on his farming after his biggest year, it certainly should be shown to the Jury and that's the reason—'

"Mr. Yoder: 'If we're going to have an argument on this, I'd respectfully suggest that the Jury be excused and we examine the authorities.'

"The Court: 'Well, what I said this morning, Bill, was exactly right, except Mr. Beard has denied that this is why he cut back.'

"Mr. McNagny: 'I think that's for the Jury's consideration. I haven't found out yet whether it was, or whether it was a fact that—'

"The Court: 'Well, he's already denied that. He cut back in '65 for the reason that he was not able to do it, so I'm going to sustain the objection on the basis that it is not relevant.'

"Mr. McNagny: 'Then, as I understand the record now, the record shows that his highest income was in 1965. When he became 65, in 1966, he cut back and the court is not permitting me to ask him about social security, taking it at 65?'

"The Court: 'Yes, because in the previous question you asked him and he has denied this is why he cut back.'

"(b) The court erred in sustaining the objection of plaintiff to question hereinafter set forth propounded by the defendant during the cross-examination of Howard Beard, plaintiff herein, witness called on behalf of the plaintiff.

"Mr. McNagny: 'Let me ask you this question, Mr. Beard, do you get social security payments?'

"Mr. Yoder: 'Same objection, Your Honor. At this time I'm going to ask that Mr. McNagny be admonished against pursuing this line of questioning. The court has ruled, we've been through this before and he knows it's highly improper.'

"Mr. McNagny: 'Well, Your Honor, I know nothing of the kind and neither does Mr. Yoder and I want to make my record proper.'

"Mr. Yoder: 'Your Honor, if we're going to have an argument on this, I suggest again that the Jury be excused and that we examine the authorities.'

"The Court: 'Well, at this time, I'm going to sustain the objection on the same grounds as the question before.'

"4. (c) The court erred in giving to the jury at the request of the plaintiff plaintiff's instruction numbered 6 and Court's instruction numbered 11, to the giving of each of which instructions the defendant duly objected within the proper time by making oral objections to the court reporter after the court had indicated the instructions it would give to the jury."

\* \* \*

"William F. McNagny, being duly sworn upon his oath, says that he is one of the attorneys for the plaintiff herein and

was in court at all times during the trial of this case including the final argument. Affiant says that a major portion of the final argument of plaintiff's attorney was devoted to damages and that these damages were in large part computed by showing the plaintiff's income from farm operations for the five years prior to the accident, arriving at a median figure therefrom and applying this median figure to the five years subsequent to the accident. The argument was also made at some length that the plaintiff's income fell dramatically between the year 1965 and the year 1966 for the sole reason that the plaintiff's physical difficulties had so increased that he was unable to work to any substantial degree after the year 1965.

"The plaintiff in his conditional examination stated that in the year 1966, which was the year after the accident and the year after he had received his highest income on the farm, his income was cut back to approximately $1,500.00 solely because of physical disabilities. He admitted in the examination that he was eligible for social security payments at age 65 and applied for them in the year 1966. The evidence both of the doctor and the plaintiff himself, at certain points of his testimony at least, was that he had improved from his alleged injuries as time went by. The defendant was prevented from arguing that plaintiff voluntarily cut back his income in order to receive social security payments and had thereafter restricted his income for the same reason.

"The argument on decreased income as hereinbefore set out was used at length and to effect in the closing argument and would certainly appear to have had major effect upon the jury's verdict in view of the minimal special damages, the total lack of any hospitalization, and the non appearance of any objective symptoms of disability in the plaintiff's appearance.

/s/ William F. McNagny"

Appellant states that substantially the same question is raised by each of the three causes and has grouped and supported them by one argument, and we will treat them as consolidated.

It appears to us that the principal objection of appellant and the principal issue in this appeal is the matter of the court's not permitting certain evidence to go to the jury.

As will be noted from a review of the motion for new trial, this was the matter of appellee's reaching the age of 65 years and becoming eligible for social security. When asked about this appellee's counsel objected, claiming it was not admissible under the "collateral source" rule and under the case of *Brindle* v. *Harter*. [*Infra.*]

The record shows that there was much discussion in the presence of the jury pertaining to the cut back on appellee's income and why it was cut back and the court sustained the objections to this question.

The following question was asked by the attorney for appellant:

"Mr. McNagny: 'Then, as I understand the record now, the record shows that his highest income was in 1965. When he became 65, in 1966, he cut back and the court is not permitting me to ask him about social security, taking it at 65?'

"The Court: 'Yes, because in the previous question you asked him and he has denied this is why he cut back.'

Later Mr. McNagny asked the appellee this question:

"Mr. McNagny: 'Let me ask you this question, Mr. Beard, do you get social security payments?'

"Mr. Yoder: 'Same objection, Your Honor, at this time I'm going to ask that Mr. McNagny be admonished against pursuing this line of questioning. The Court has ruled, we've been through this before and he knows it's highly improper.' "

There was an interchange between lawyers as to whether the line of questioning was proper or improper, after which Mr. Yoder asked that the jury be excused and the parties examine authorities. The court then sustained the objection to the questions in the presence of the jury.

The motion for new trial set forth the affidavit of William F. McNagny, stating therein that he was one of the attorneys for the plaintiff (sic) [this is a typographical error, as he had to mean 'attorney for defendant'] and was in court at all times during the trial of the cause, including the final argument. He

deposes further that a major portion of the final argument of plaintiff's attorney was directed to damages and these damages were in large part computed by showing the plaintiff's income from farm operations for the five years prior to the accident, arriving at a median figure to the five years subsequent to the action; that the argument was also made at some length that plaintiff's income fell dramatically between the year 1965 and the year 1966, for the sole reason that the plaintiff's physical difficulties had so increased that he was unable to work to any substantial degree after the year 1965.

He further deposed that in 1966, the year after the accident, the appellee received his highest income on the farm and his income was cut back to approximately $1,500 solely because of physical disabilities. Affiant further said that appellee admitted in a conditional examination that he was eligible for social security benefits in the year 1965 and applied for them in the year 1966.

Appellee filed a counter-affidavit in opposition to defendant's affidavit in support of the motion for new trial, in which the affiant said he was the attorney for the appellee and he, too, was present in the court room throughout the trial of the cause, and heard all the oral arguments to the jury presented by Mr. McNagny.

He stated further that during said oral argument said attorney for the defendant did orally inform the jury that the plaintiff was receiving social security payments, and that said attorney did, in fact, argue to the jury that the plaintiff had permitted his earnings to decrease after the accident in question because of the receipt of such social security payments; and this, rather than plaintiff's physical disability, explained the cut back in income.

Affiant further stated that although said argument was objectionable and in direct violation of the court's admonition to counsel given pursuant to plaintiff's "Motion for Admonition to Counsel Not to Disclose to Jury Fact of Plaintiff's Social

Security or Other Financial Benefits" filed on July 8, 1968, and granted on July 9, 1968, plaintiff's counsel did not object thereto because the fact of such payments had already been disclosed to the jury by the tenor of the questions said attorney for defendant asked the plaintiff on cross examination and for the further reason counsel thought that to object at that time would further emphasize and highlight the social security.

Affiant further said that in appellant's oral argument to the jury, said attorney for defendant also specifically mentioned the figure of $1,500, and argued that the plaintiff had voluntarily permitted his annual income to drop below said figure, after the accident, so as to remain eligible for social security payments.

Affiant further said that appellant was not prevented from arguing that plaintiff voluntarily cut back his income in order to receive social security payments and had thereafter restricted his income for the same reason, as alleged in the affidavit in support of the motion for a new trial.

Appellant waived specification 4 of his motion for a new trial. In his brief, appellant states that he relies upon and urges as grounds for reversal causes 1, 2 and 3. Appellant has grouped causes 1, 2 and 3 and supported them by one argument.

We shall group specifications 1 and 2, which claim excessive damages and that the assessment of the amount of recovery is too large, and treat them as one in this opinion.

The amount of the verdict in this cause was $10,000. The appellee had prayed $200 property damage and the verdict did not divide the award as to personal injuries and property damage.

Wiltrout's Indiana Practice, Vol. 2, § 1766, reads, in part, as follows:

"The amount of damages assessed must appear so outrageous as to impress the court 'at first blush' with its

enormity. This provision applies principally in personal injury cases."

Judge Carson of this court, in the case of *Barbee* v. *McKay* (1968), 143 Ind. App. 205, 238 N. E. 2d 690, Tr. denied 11/13/68, said:

> "To support the assignment that the trial should be reversed for excessive damages, it must appear at first blush that the award was so excessive or outrageous, or that it is of such an amount as to lead to the conclusion that the jury must have been moved by prejudice, passion, partiality or corruption. . . . *Indianapolis Transit, Inc.* v. *Moorman* (1963), 134 Ind. App. 572, 189 N. E. 2d 111; *Bassemier* v. *Sartore* (1964), 137 Ind. App. 139, 201 N. E. 2d 285; and *Sheets* v. *Garringer, by Next Friend, etc.* (1963), 135 Ind. App. 488, 194 N. E. 2d 757."

A careful review of the evidence in this cause does not lead this court, at first blush, to believe that the award was so excessive or outrageous that the jury was moved by prejudice, passion, partiality, or corruption. A $9,800 or $10,000 award for whiplash injuries to the cervical spine and an aggravation of a pre-existing arthritic condition to a man of the age of 63 years may be said to be a run-of-the-mill award of damages throughout the divers trial courts of the State of Indiana.

Further, appellant's counsel in his argument said there was "plenty of evidence to sustain the verdict if you believe him [meaning appellee] but not enough if you don't believe him."

We are constrained to hold that the award of damages was not excessive, and that the jury believed appellee.

Appellant vigorously asserts error as to specification 3 of his motion for new trial in that error of law occurring at the trial is reversible error. Appellant contends that appellee's eligibility for social security benefits upon reaching age 65 is both material and highly relevant to a key issue of damages alleged by the plaintiff. Appellant admits that testimony concerning appellee's receipt of social security benefits may be

inadmissible under the Indiana "collateral source" rule to mitigate a plaintiff's damages, but insists it is error to exclude such testimony where the presence of social security benefits is relevant to the issue of the reason for any decrease in the plaintiff's earnings.

Appellee's property damages and medical expenses were approximately $200 and $250 respectively. The appellee was of an age and had physical conditions wholly unrelated to the accident in question which could have, without any accidental injury, caused him physical discomfort and to slow down his income-producing activities in the years following the accident.

Appellee's net income in 1964, the year of the accident, was $4,579 and in 1965, was $4,845. In 1966, appellee attained the age of 65 years and applied for social security benefits and his net income that year was $1,452. In the year of 1967, his net income from the farm was $395 and in the year of 1968, it was $998.

Appellee testified that his income from farming operations had dropped substantially due to incapacity to perform his work due to injuries sustained in the accident here involved. He testified as to his income from farming operations from the year 1962 through 1968. On the basis of the drop in income and subsequent loss of income from his farming operations appellee predicated a demand for some $3,000 a year in lost income as a result of said injuries.

Appellee contends that by means of the line of questioning as set out in the motion for a new trial the appellant sought to place in evidence facts directly relevant to appellee's earning capacity and loss of earnings. Appellee vigorously asserts that it cannot be contended that reasons other than physical injury caused by the accident in question which may have, and indeed probably did, cause the appellee to curtail his income-producing activities are not relevant to this question and entitled to full consideration by the jury.

Appellant further contends that the facts he sought to place before the jury (*supra*) and which were rejected by the trial court, were essential to allow the jury to consider circumstances of this case which strongly suggest that the appellee curtailed his income-producing activities for reasons other than impairment of an injury which he may have sustained as a result of the accident complained of.

Throughout these proceedings the sole apparent objection to testimony regarding the fact that appellee became eligible for social security payments in 1966 was that evidence of social security payments is, *per se,* inadmissible under the "collateral source" rule. Appellant contends that the court's ruling in this regard failed to recognize legitimate exceptions to the ambit of the "collateral source" rule and by excluding testimony regarding an issue which should properly have been before the jury, prejudiced appellant's presentation of his defense to plaintiff's claims for damages as a result of loss of earning capacity and earnings.

The "collateral source" rule in Indiana is generally stated as follows:

> "Compensation for the loss received by plaintiff from a collateral source, independent of the wrongdoer, as from insurance, cannot be set up by the wrongdoer in mitigation of damages.

> "There can be no abatement of damages on the principle of partial compensation received for the injury when such compensation comes from a collateral source independent of the one primarily responsible for the loss.

> "Defendant may not aver that the loss has been made good in whole or in part by insurance, and a tortfeasor is without interest and has no concern in an insurance contract owned by the injured party and indemnifying him for damages sustained from the tort. Where the amount of loss resulting from the acts of defendant exceeds the amounts of insurance paid by plaintiff's insurer, plaintiff may sue in his own name and recover the full amount of the loss, the question of distribution of proceeds being a matter between the insured and insurer only.

"In determining the amount of damages for the loss of future earning capacity, the amount of compensation which the injured person may reasonably secure in his condition may be considered. The fact that plaintiff's employer continues his salary during the time he is disabled, or pays for medical and hospital expenses, or that plaintiff receives a sick benefit does not mitigate the damages to which he is entitled in an action against another party for a physical injury."

9 I.L.E. 356, *Damages*, § 86—Insurance or other Collateral Compensation.

Both parties discussed the case of *Brindle* v. *Harter* (1965) 138 Ind. App. 692, 211 N. E. 2d 513, which is an action brought by a party injured in an automobile collision with facts very similar to the case before us in that in the *Brindle* case appellant's motor vehicle was stopped at a traffic light and was struck in the rear by appellee's automobile on a rain-slicked road.

On the trial of that cause appellant's attorney asked various questions of a supervisor at appellant's place of employment concerning appellant's duties, hours worked and absenteeism record; and then asked questions about the retirement plan for employees, retirement age of employees and if the retirement was based upon age alone, which was followed by the appellee asking the same witness questions about an injured employee who was working at Perfection having the right to go to a hospital no matter where he was injured and have the bill largely picked up by Perfection. Objection was timely made that it was not proper cross examination and the court overruled the objection, stating that the entire matter had been opened up on direct examination.

This was followed by another question where the witness was asked if the appellant, while off seven weeks, was paid $235 on top of his medical bills by Perfection. Objection was made and the court overruled the objection. The *Brindle* case held further, at page 698:

"A large number of cases have held that even error in the admission or exclusion of testimony on cross-examination will not be grounds for reversal, *barring prejudice to the complaining party.* [Citing cases.] And finally, in *Walker* v. *State* (1924), 194 Ind. 402, 405, 142 N. E. 16, it was held:

'With reference to the cross-examination of which complaint is made, it is clear from anything here shown that it had reference to matters entirely irrelevant and therefore improper from any point of view. But, is the error one justifying us in reversing the judgment? Appellant was found guilty on each of four counts. . . .

'*In view of the entire evidence and the judgment as finally rendered* in this case, we are well convinced that a retrial would not result more favorably to appellant. Assuming as we may, that the judgment rests upon the good counts and not upon the bad (*Wallace* v. *State* [1920], 189 Ind. 562), and it affirmatively appearing from the record to our entire satisfaction that the erroneous evidence admitted upon cross-examination of appellant exerted no special influence over the verdict of the jury or was otherwise prejudicial to the rights of appellant, but that, in reality, a fair and impartial trial was had and a just conclusion reached a reversal of the judgment under these circumstances ought not to follow. . . . (Emphasis added)'

"In view of the above, therefore, it appears that as a general rule of law in this state evidence erroneously admitted upon cross-examination, to constitute reversible error, must have been of the character which could not have been proven by the examiner in direct examination, it must be of a type which could affect the attitude of the jury or prejudice the complaining party; and there must appear the possibility that in view of all evidence presented the erroneously admitted evidence could have affected the final verdict.

"It now remains only to decide if the facts of the instant case fall within the above stated proposition. *It is an accepted rule that evidence of benefits received by or financial standing of, plaintiff cannot be introduced by the defendant in mitigation of damages.* [Citing cases.] In order to determine if the questioned testimony would be considered prejudicial or be of the type calculated to affect the jury, we must draw analogies from the language of cases in which evidence of the defendant's liability insurance was introduced. It was held in *J. C. Penney, Inc.* v. *Kellermeyer* (1939), 107 Ind. App. 253, 265, 19 N. E. 2d 282, 22 N. E. 2d 899:

'Whether or not such insurance was carried by the appellant could not in the slightest manner affect the question of the appellant's negligence charged in the complaint. Persistent efforts in this field of evidence which tend only to confuse and possibly prejudice the jury *are usually regarded as prejudicial requiring a reversal.*' (Emphasis added)"

We are of the opinion that the "collateral source" rule was first intended to apply to cases wherein the injured party was protected by some sort of insurance policy and that the question of whether social security benefits would come under the rule was, at the inception of the rule, not considered.

As was said in the *J. C. Penney, Inc.* v. *Kellermeyer* case, *supra,* "Whether or not such insurance was carried by the appellant could not in the slightest manner affect the question of the appellant's negligence charged in the complaint."

Likewise, in the case before us, whether or not the appellee became eligible for social security benefits during the time he was injured could not in the slightest manner affect the question of negligence as charged in his complaint.

However, we have a completely different question presented by the appellee's qualifying at the time he did for social security than we have in the *J. C. Penney* case and in *Brindle* v. *Harter, supra,* in which cases the question was insurance benefits.

Appellee introduced evidence as to his physical condition and loss of earnings, which he claimed were the proximate result of appellant's negligence. He also introduced evidence of his income from the years of 1962 through 1968 and showed therein that certain years he carried grain over and sold it the following years, which increased his income.

This court takes judicial notice of the fact that prior to the year 1969 under social security a person over the age of 65 was limited to earnings of $1,500 per annum and can still draw his social security. It was this that appellant so vigor-

ously contended he was entitled to show as a rebuttal to appellee's evidence as to income and disability. The primary problem before this court is whether or not the appellant should have been permitted to introduce the evidence offered as a rebuttal to appellee's evidence in chief.

In *Reserve Life Insurance Co.* v. *Luedke, et al.* (1961), 132 Ind. App. 476, 177 N. E. 2d 482, wherein the appellee brought an action against the insurance company on a hospitalization and medical expenses insurance policy, it was claimed the appellee had tuberculosis prior to the issuance of the policy.

When appellee was preparing her case in chief the appellant presented and introduced X-rays of appellee's person which had been taken throughout the years, including those prior to the issuance of the policy. The court said:

> "Plaintiff had the right on rebuttal to give her version and explanation of the X-rays and to show that she believed she was in good health at the time. Where evidence on a certain issue is introduced by one party, and it appears likely that the other party will be prejudiced unless he is permitted to introduce contradictory or explanatory evidence, such evidence should be admitted. *Lyon* v. *Aetna Life Insurance Company* (1943), 112 Ind. App. 573, 44 N. E. 2d 186; 12 West's Indiana Law Encyclopedia, *Evidence,* ch. 3, § 54, p. 486. This was proper rebuttal evidence and there was no error in admitting it."

12 I.L.E. 486, *Evidence,* § 54—Evidence Admissible Because of Adverse Party's Evidence, reads, in part, as follows:

> ". . . Accordingly, where evidence on a certain issue is introduced by one party, and it appears likely that the other party will be prejudiced unless he is permitted to introduce contradictory or explanatory evidence, such evidence should be admitted. The admission of contradictory or explanatory rebuttal evidence that is otherwise inadmissible depends on the court's judgment of the prejudice that will result if such evidence is not permitted, and the fact that an attorney, without objection, has asked the question and obtained an answer on a matter purely collateral to the issue does not justify the admission of such evidence in rebuttal."

The case of *Fahler* v. *Freeman* (1968), 143 Ind. App. 493, 241 N. E. 2d 394, was also a rear-end type automobile collision. The jury found for the defendant. The record is well punctuated with exchanges by counsel as to the propriety and admissibility of certain testimony. The overruling of appellant's objections to questions by appellee which showed that the appellant received employee's compensation payments for his medical expenses and did not bear these expenses out of pocket is assigned as error.

This court, in passing on the *Fahler* case, quoted *J. C. Penney, Inc.* v. *Kellermeyer, supra,* and *Brindle* v. *Harter, supra.*

The court, in discussing the *Brindle* case, said:

" 'Generally, it has been held to constitute error, requiring a reversal or new trial, to bring to the jury's attention the fact that the plaintiff in a personal injury or death action is entitled to workmen's compensation benefits. The courts have reasoned that such information would tend to prejudice the jury and influence their verdict, *either as to liability or damages* * * * ' (Their emphasis.)

"*Brindle,* however, faced the issue of the propriety of certain questions concerning workmen's compensation which were outside the scope of the direct examination. That case is therefore distinguishable from the case at bar. In this cause, the questions were offered for purposes of impeachment of the plaintiff's prior testimony and, on these facts, properly so. The direct questioning of the plaintiff and his careful answers appeared to be clearly designed to leave the jury with a false impression. The direction of the plaintiff's testimony departed from the issue of the amount of damages he had allegedly sustained and then focused upon *who* had actually *paid* for them. Plaintiff entered this area at his peril. At that point the defendant was entitled to refute the inference that plaintiff had paid these bills himself and had exhausted his savings in doing so as he had implied. Where evidence on a certain issue is introduced by one party, and it appears likely that the other party will be prejudiced unless he is permitted to introduce contradictory or explanatory evidence, such evidence should be permitted. *Reserve Life Insurance Co.* v. *Luedke et al.* (1961), 132

Ind. App. 476, 177 N. E. 2d 482; also see *Lyon* v. *Aetna Life Insurance Company* (1943), 112 Ind. App. 573, 44 N. E. 2d 186. This is an obvious and logical exception to our rule as stated in *Brindle, supra.*

"Having disposed of this issue thusly, we see no need to discuss the question of prejudicial testimony going only to the issue of damages which was argued by the parties as an alternative theory."

It is our opinion that if the "collateral source" rule did apply in the case before us it was waived by appellee by his attorney's interrogating him as to the lessened income he received from farming the years after he was involved in the collision. The appellee having opened the gate on the matter of reduced income as a result of the collision complained of, the appellant has the right to drive through and to cross examine on the issues raised by appellee.

In the case of *Pickett* v. *Kolb* (1968), 250 Ind. 449, 237 N. E. 2d 105, our Supreme Court considered a case where, in cross examination of an investigator of the accident the defendant asked the employment of the investigator, who was an agent of the defendant's insurance carrier. The trial court sustained the objection to any question which would reveal the presence of insurance. The Supreme Court reversed the trial court's ruling, in the following words:

"However, evidence material to the establishment of a cause of action or defense cannot be considered improper or inadmissible simply because it is prejudicial. While evidence as to the existence of insurance is often inadmissible because irrelevant, there are numerous cases involving situations where evidence of insurance coverage is competent. For example, it has been recognized in the great preponderance of jurisdictions in this country, including Indiana, that evidence as to the possession of liability insurance will not be excluded in cases where its suppression would exclude evidence material to the establishment of a cause of action and the liability of a defendant sued for damages. See cases collected in annotation 4 A.L.R. 2d 761, 775; *Snider* v. *Truex* (1943), 222 Ind. 18, 51 N. E. 2d 477.

"It necessarily follows that proof of insurance if necessary to establish either a cause of action or defense under the issues, is competent and may be shown.

\* \* \*

"In other words, proof of liability insurance in and of itself is not admissible, but such a principle may not be expanded to the extent that it serves as a means of excluding otherwise competent evidence which is relevant to the issues involved in the trial. We do not think that a trial court may arbitrarily exclude otherwise competent and relevant evidence merely on the ground that it will reveal an insurance carrier is involved.

"In this case, as previously stated, if a party sees fit to present a witness on his behalf, the opposing party has a right to cross-examine that witness with reference to all his interests in the litigation, including who is compensating him or giving him anything of value which resulted in his being a witness or participating actively in the litigation."

See, also: *Northern Indiana Public Service Company* v. *Otis* (1969), 145 Ind. App. 159, 250 N. E. 2d 378; *City of Terre Haute* v. *Deckard* (1962), 243 Ind. 289, 183 N. E. 2d 815.

Applying the reasoning of the *Pickett* v. *Kolb* case, *supra,* to the action before us we are of the opinion that appellee, through interrogation by his attorney as to his income or loss of income from farming after the collision was a proper subject for cross examination and the court erred in not permitting such cross examination.

We are now confronted with the further problem raised by appellant's affidavit, made a part of his motion for new trial, and appellee's counter-affidavit, filed in opposition to appellant's motion for a new trial.

In I.L.E., Vol. 22, p. 120, § 131 "New Trial," Supreme Court Rule 1-15 is quoted and the text reads as follows:

"*Affidavits and additional evidence.* Under Supreme Court Rule 1-15 affidavits in support of a motion for a new trial, and counter affidavits and reply affidavits shall be considered as evidence without the introduction thereof on the hearing on the motion. If, besides the affidavits, additional evidence

is received, the trial court shall cause the court reporter to record all such evidence, and when so transcribed, the same shall be submitted to the judge who shall certify that it is a true and complete transcript of such evidence, and the same shall be filed with the court."

It is the rule that the parties should never argue matters not in evidence or within the issues. However, counsel may state and comment on all proper inferences from the evidence and may draw reasonable conclusions from the evidence on his own system of reasoning.

"Counsel may properly argue and comment on self-evident facts and matters of common knowledge outside the record and illustrative examples may properly be drawn from personal experiences or historical references."

28 I.L.E. 89, ch. 4, § 89—Matters Not in Evidence or Within Issues.

Considering the affidavits of the respective parties, which were that the appellee computed his damages by showing his income from farm operations for five years prior to the accident, arriving at a median figure therefrom and applying this median figure to the years subsequent to the accident, the argument was that the appellee's income fell greatly in the years of 1965 and 1966 for the sole reason of his physical difficulties which had increased so that he was unable to work to any substantial degree after the year of 1965.

There was further evidence in the affidavit that appellee admitted in his conditional examination that his income was cut back approximately $1,500 in 1966, solely because of physical disabilities. He admitted he was eligible for social security payments at age 65 and applied for them in 1966.

The attorney for appellee, in his affidavit in opposition to the motion for new trial, said that appellant's attorney did orally inform the jury in argument that the appellee was receiving social security benefits and further argued that the appellee had permitted his earnings to decrease after the acci-

dent in question because of the receipt of such social security payments rather than appellee's physical disability which explained the diminution in appellee's earnings after 1964. Said attorney further deposed that no objection was made to appellant's argument because of the fact that such payments had been disclosed to the jury by the tenor of the questions the attorney for appellant asked the appellee on cross examination, which questions were set out in appellants' motion for new trial, and because of the danger of the fact of further emphasizing such payments by objection.

Appellee's counsel's affidavit further said that the attorney for the appellant specifically mentioned $1,500 and argued that the appellee had voluntarily permitted his annual income to drop below said figure after the accident so as to remain eligible for social security benefits.

In the case of *Reeves* v. *The State* (1882), 84 Ind. 116, the prosecuting attorney made objectionable statements in his closing argument and the appellant objected upon the ground that there was no evidence that he, the appellant, had been attacked and injured as argued by the prosecuting attorney, and that such line of argument was calculated to injure him in the minds of the jury; the court overruled the appellant's objection, alleging as a reason that what the prosecuting attorney had said was not an improper reply to the statements of appellant's counsel, who had likewise gone outside the proven facts in the cause. The court further said:

> "These proceedings were irregular and of a character which ought to be restrained, as far as practicable, by the courts; but we are of the opinion that, in view of what was first said in his behalf, the appellant had no reason to complain of the statements and comments made by the prosecuting attorney in reply...."

The court said, further, that had the court been asked to instruct the jury to disregard assertions made by counsel, a different question might have been presented.

In the case before us the record discloses that the counsel of each of the parties, in his zeal to adequately and fully represent their clients, may have, in the interrogation of witnesses, gone beyond the scope of legal interrogation as set forth by our rules of evidence. Objections were made thereto and it was all discussed in the presence of the jury and the court ruled thereon.

The final arguments of counsel were made and went beyond the evidence properly admitted by the court and no objection thereto was made by either of the parties. The affidavits of the respective parties in the motion for new trial and in opposition thereto are properly before this court as evidence in this cause. Although this court cannot weigh the evidence, the court knows that all evidence appellant attempted to get to the jury pertaining to appellee's loss of wages and the reasons therefor did get to the jury, although objection was made at the time.

From the affidavits of the respective parties we know that the matter of loss of income was vigorously argued by the parties in final argument.

We have searched the transcript for all instructions tendered, refused and given and nowhere therein, nor in the briefs, do we find that the jury was ever admonished by the court to refrain from considering any evidence admitted over objections, not to consider what answers may have been given to a question where the objection was sustained, nor to refrain from considering the evidence given where the answer was stricken by the court. We also fail to find where any instruction was given to the jury by the court not to consider anything said in final argument by counsel as anything other than a resume of the evidence that had been permitted to come to them from the witness stand.

For the reasons heretofore assigned we are of the opinion that the appellant was successful in getting all of his evidence to the jury for its consideration and that he further was

successful in arguing to the jury his theory on the diminution of income of appellee as the result of appellee's drawing social security at the age of 65 after the collision complained of.

We are of the further opinion that since there were no instructions to the jury that they could not consider such evidence and arguments, that such evidence and arguments were considered by the jury.

The facts of the case before us are the inverse of the *Brindle* case, *supra,* in that in our case the evidence was not erroneously admitted but, in our opinion, was erroneously kept out of the record. Our case, like the *Brindle* case, presents this question—is the error one justifying us in reversing the judgment?

In view of the entire evidence, the argument of counsel to the jury, and the judgment as finally rendered in this case, we are convinced that all the evidence which could be admitted in the retrial of the cause and argued to the jury in the retrial of the cause was presented to the jury and argued by counsel in final argument and was considered by the jury and that a retrial would not result more favorably to appellant. It affirmatively appears from the record that appellant got all of his evidence to the jury upon cross examination and that he argued the same to the jury, without objection. Since there was no instruction from the court that the jury could not consider the same, appellee's objection to the admission of said evidence exerted no special influence over the verdict of the jury or was otherwise prejudicial to the rights of appellant. In reality, a fair and impartial trial was had and a just conclusion reached. A reversal of the judgment under such circumstances should not follow.

In view of the above, we need now to decide only if any good purpose could be achieved by reversal. Was there such a preponderance of evidence in favor of the verdict as to make reversal a useless thing, in that the result of a new trial would be the same as before? We think so. We have care-

fully read the record and find that the appellant got all of his evidence to the jury and further argued it to the jury, without objection, and there is nothing in the evidence which would require us to believe that the admission of the evidence in question, without objection, would necessarily change the verdict and that, in all probability, it would remain as before.

Finding no reversible error, judgment is affirmed.

Costs versus appellant.

Carson, Cooper and Sullivan, JJ., Concur.

NOTE.—Reported in 255 N. E. 2d 837.