SHIVELY v. STATE OF INDIANA.

[No. 29,460. Filed May 9, 1957. Rehearing denied June 19, 1957.]

*Rufus C. Kuykendall,* of Indianapolis, for appellant.

*Edwin K. Steers,* Attorney General, *Owen S. Boling* and *Merl M. Wall,* Deputy Attorneys General, for appellee.

BOBBITT, J.—Appellant was charged by affidavit with the offense of second degree murder, tried by jury, found guilty as charged, and sentenced to the Indiana State Prison for life.

Three questions are presented for our consideration.

*First:* Appellant contends that the court erred in overruling his objections to certain questions propounded by the State to witnesses, police officers David Jeter and Fred Whisler. Such questions call for a recital of a conversation had with appellant when the police first entered the apartment and found him on the floor wounded and in pain. Appellant asserts that the statement made by him to these policemen was in the nature of an extrajudicial confession, therefore it was error to admit such conversation in evidence before the *corpus delicti* had been established by independent proof.

While it is true that the *corpus delicti* cannot be established solely by the uncorroborated extrajudicial admission or confession of the accused, however, such admission or confession, when corroborated by other evidence, may be considered in determining whether the *corpus delicti* has been proven beyond a reasonable doubt. *Hunt* v. *State* (1939), 216 Ind. 171, 178, 23 N. E. 2d 681; *Parker* v. *State* (1950), 228 Ind. 1, 8, 88 N. E. 2d 556, 89 N. E. 2d 442.

The evidence is undisputed that appellant called the police himself and reported the shooting; that he opened the door and admitted them to the apartment and freely and voluntarily told them what had happened.

No contention is made here that such statement or admission was not voluntarily or freely given.

The objection as shown in the motion for a new trial is: "Defendant objects: To any conversation had between officer Jeeter and the defendant because of defendants' physical condition and defendant was in a state of shock; he didn't know to whom he was talking, and he didn't know the consequences of what he was saying."

We find no merit to this objection, and particularly so since appellant himself called the police, let them into the apartment within five minutes of the call, and voluntarily told them what had happened. Under the circumstances here appellant's statement and admission to the police officers was clearly admissible. Ewbanks Indiana Criminal Law, Symmes Ed. §392, p. 242.

*Second:* Appellant asserts that the evidence is not sufficient to sustain the verdict of the jury.

In examining the evidence to determine whether it is sufficient to sustain the conviction herein, and considering only that most favorable to the State, the

record discloses that a witness for the State, who lived in the rear of the apartment occupied by the deceased herein, testified that on February 6, 1955, at about 5 p.m. appellant came to his door and asked permission to be let into the deceased's apartment, as it appears that her apartment could be entered through the room occupied by this witness. He further testified that apellant came to his door three or four times that day trying to enter the deceased's apartment, saying that he wanted to get into her apartment because he thought she was sick. Appellant again returned about 7:30 p.m. to the witness's door and asked him to leave a message for the deceased telling her that if she didn't let him in he would break the door down because he had seen her in the kitchen window. The message was delivered by the witness to the deceased and about 10:30 p.m. he heard her let defendant into her apartment. Later he heard them quarreling.

The police came to this witness's door and awakened him between 4:15 and 4:30 on the morning of February 7, 1955. They took him into the deceased's apartment where he saw her lying face down on a couch and was not moving nor making any sound.

This witness testified that he last saw the deceased alive at about 8:30 p.m. on February 6, 1955.

A physician who was at the time a deputy coroner testified that he received a call about 4 a.m. on February 7, 1955 to go to 164 West Ninth Street. Upon entering the apartment when he arrived there, he saw the body of a woman lying on the sofa. There were two bullet wounds evident, one in the left breast and one in the upper left abdomen. This physician further testified that the woman (deceased herein) was dead, and that she had died from gunshot wounds, and that she had been dead at least two hours when he arrived.

A member of the Indianapolis Police Department testified that he and his partner received a call on their patrol car radio at about 3:45 a.m. on February 7, 1955, to go to 164 West Ninth Street and investigate a report that a man had shot his wife and himself. When they arrived at this address, looking between the door and venetian blind, he saw appellant on the floor crawling to open the door for the police to enter. Upon entering the apartment they saw appellant lying on the floor and the body of the deceased on the sofa on the east side of the room. This witness asked appellant his name which he gave. He further testified that appellant was crawling on the floor and apparently in pain and "had bled quite a bit." They called an ambulance in order that appellant might have medical attention as soon as possible. This witness asked appellant what had happened and appellant replied that he and Miss Barbee (the deceased herein) had had a lover's quarrel about twelve o'clock and that he shot her twice and then shot himself. The police found a 32 H & R revolver lying on the floor between appellant and deceased, and about five feet from appellant and about one and one-half feet from and in front of the couch on which the body of the deceased was found.

The testimony of this witness was supported in detail by the police officer who was working with him at the time the call was received to make the investigation at 164 West Ninth Street.

Another officer of the Indianapolis Police Department, who was a member of the Homicide Detail, was also sent to the above address to investigate a report that a man and woman had been shot. This witness supported the first officer's testimony and identified three empty cartridges which had been taken from the gun found on the floor of the apartment, and a lead slug

which was recovered from the davenport on which the body of the deceased was found. This witness further testified as follows:

"Q. Now, officer, when you arrived there did you have a conversation with the defendant?

"A. Yes sir.

"Q. Did you ask him his name?

"A. No sir.

"Q. Why didn't you ask him his name?

"A. I knew his name.

"Q. Would you state to the jury, was he able to talk?

"A. He was.

"Q. Would you state to the jury what you said to him and what he said to you, if you recall?

"A. I said, 'Eddy, who shot you?' he said, 'I did,' I said, 'Who shot her?' indicating the lady lying on the davenport, he said, 'I did,' I said 'How man[y] times?' he said, 'twice,' I said 'What happened?' he said, 'we had a quarrel,' I said, 'About what time did you shoot her?' he said, 'about midnight,' I said 'How much later was it when you shot yourself?' he said, 'approximately thirty minutes.' I asked him if this was the gun he shot himself and her with and he said it was. I asked him if that was his gun and he said it was."

A deputy coroner who performed an autopsy on the body of the deceased testified that the body bore evidence of external violence and that death resulted from lethal hemorrhage in the left side of the chest and into the abdomen resulting from a "penetrating perforating gunshot wound of the chest and abdomen."

A detective in the Indianapolis Police Department who made an investigation along with the officers heretofore mentioned, also testified that appellant told the officers that he shot Miss Barbee twice and then shot himself because they had had a lover's quarrel,

and that the gun lying on the floor when the police arrived belonged to him (appellant).

The lead slug found in the couch and hereinabove mentioned was identified as having been fired from appellant's gun which was found on the floor as heretofore related.

Appellant testified that he called the telephone operator and asked her to send the police to 164 West Ninth Street that two people had been shot; and that ■ he opened the door for the police to enter the apartment. This evidence is abundantly sufficient to sustain the verdict of the jury.

*Third:* Since the evidence was sufficient to sustain the conviction herein, the trial court did not err in overruling the appellant's motion for a directed ■ verdict at the close of all the evidence. *State* v. *Torphy* (1940), 217 Ind. 383, 388, 28 N. E. 2d 70.

The evidence is sufficient to sustain the conviction herein and appellant has failed in his burden to establish reversible error, hence the judgment of the trial court must be affirmed.

Judgment affirmed.

Achor, C. J., Arterburn, Emmert and Landis, JJ., concur.

NOTE.—Reported in 141 N. E. 2d 921.