KENNETH L. STEPHENS *v.* STATE OF INDIANA.

[No. 772S90. Filed May 7, 1973.]

*Hall Cochrane,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Anthony J. Metz,* Deputy Attorney General, for appellee.

GIVAN, J.—Appellant was charged by affidavit with the crimes of robbery, kidnapping and rape. He was found guilty as charged as to counts one and two and was found guilty of the lesser included offense of assault and battery with intent to commit a felony as to count three. Appellant was sentenced to the Indiana State Prison for ten to twenty-five years for robbery, one to ten years for assault and battery with intent, and to life imprisonment for kidnapping.

The record reveals the following facts:

On June 2, 1971, Sharon Collins was working at the Woodruff Place Bargain Center in Indianapolis, Indiana. At approximately 2:30 P.M. appellant and one Allen Wallace came into the store. Appellant displayed a gun and ordered

Mrs. Collins to put the money from the cash drawer in a paper bag. She complied by placing about $112 in the bag appellant had given her. The two men then forced Mrs. Collins to accompany them. She was forced to lie down on the floor of the back seat of the automobile. Appellant sat in the back seat and kept his pistol aimed at Mrs. Collins while his companion drove the car. After driving some period of time, they stopped the car and forced Mrs. Collins to get out. She was later able to identify this place as being on the bank of White River in southwestern Marion County.

Appellant and his companion took Mrs. Collins into a storm sewer at that place, where they forced her to disrobe, and each man had sexual intercourse with her. They also removed a diamond ring from her finger valued at $1,500. Before leaving her, they told Mrs. Collins that they would kill her if she did not remain in the storm sewer for a period of time after they left.

After the men had left, Mrs. Collins retrieved a portion of her clothing, and partially dressed, she climbed the embankment and stopped a woman motorist, who took her to a nearby fire station. At that time she was hysterical and covered with mud. She reported what had happened to the fireman, who called the police.

Mrs. Collins was sent to General Hospital for treatment and police officers went to the storm sewer where they found Mrs. Collins' underwear and slippers.

The following morning Mrs. Collins went to police headquarters and looked through numerous pictures and slides furnished her. On June 4 she again returned to the police station and looked at still more pictures. In the meantime, police officers had received an anonymous phone call that it was appellant and Wallace who had committed the crimes. Police then inserted the pictures of both appellant and Wallace into the stacks of photographs yet to be examined by Mrs.

Collins. When she came to these photographs, she identified both men from the pictures.

At appellant's trial, Wallace testified that he was guilty of the charges against him, and that the appellant was his partner in the crimes. Wallace's version of the facts was virtually the same as Mrs. Collins', although he had not been present when she testified. Wallace was later called as a witness for the defense, at which time he stated that his prior testimony for the State was untrue, and that the facts recited were based upon a newspaper article he had read. However, cross-examination revealed that some of the facts which he had previously stated did not appear in the newspaper article. Wallace claimed he only testified for the State because the police officers were going to recommend that he get a one to ten year sentence for cooperating. In rebuttal, a police officer testified that he had not made any promises to Wallace, but had told him that he would recommend to the prosecutor that Wallace receive a one to ten year sentence. The officer further stated that he told Wallace any plea bargaining must be done through the prosecutor and Wallace's own attorney. Also, during the trial Mrs. Collins specifically identified the appellant as one of her assailants and pursuant to cross-examination specifically stated that her identification of the appellant was based entirely upon her observation of him at the time of the commission of the crimes and was not in any way affected by her examination of pictures at the police station.

Appellant offered alibi evidence through a niece, who testified that on the day in question appellant was at his mother's house a few blocks from the Woodruff Place Bargain Center, and that he remained there from 1:00 P.M. until shortly after 3:00 P.M.

Appellant claims that he was denied due process in violation of the United States Constitution and the Constitution of

Indiana in two respects: 1) that the in-court identification of him was based on an improper line-up; and 2) that he was denied a preliminary hearing. With regard to the identification, Mrs. Collins' testimony during appellant's trial clearly established that her identification in court was based solely upon her observations of appellant and her recollection of his appearance at the time of the crimes. Thus, any possible irregularity concerning any line-up or photograph identification was harmless. *Fulks* v. *State* (1970), 255 Ind. 81, 262 N. E. 2d 651, 23 Ind. Dec. 138.

Appellant further claims that after his arrest, at a police line-up, he was prejudiced in that he was required to speak. The record shows that he was only asked to state his name and address. Requiring an accused to make such statements is permissible. See *U.S.* v. *Wade* (1967), 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149.

As to appellant's contention that he was denied a preliminary hearing, no such contention was made prior to trial, nor was there such contention in his motion to correct errors. This question is, thus, not raised. IND. RULES OF PROC., Rule TR. 59 (G).

Appellant next claims that he was denied due process in that Mrs. Collins was permitted to testify, and the court admitted State's exhibits 2, 3 and 4 into evidence.

Appellant claims that Mrs. Collins' testimony as to her assailant's description varied from that which she gave the police. Mrs. Collins had told the police that her assailant was approximately five feet, nine inches tall and pale whereas appellant was, in fact, five feet, eleven inches tall and claims that he was suntanned at the time. This type of variance in description and testimony goes only to the weight of Mrs. Collins' testimony, which was within the province of the jury to determine. This Court will not invade that province. *Hash* v. *State* (1973), 259 Ind. 683, 291 N. E. 2d 367, 34 Ind. Dec. 635.

Exhibits 2, 3 and 4 were photographs of the automobile used by appellant and his companion. Appellant argues that these exhibits were improperly permitted because they show the automobile to be a burnt orange Mercury, whereas Mrs. Collins first told police she was abducted in a red Chevelle. However, this matter was fully gone into at the trial, and Mrs. Collins, after examining the exhibits, testified that they were photographs of the automobile in which she was abducted. Here again the objections of the appellant do not go to the admissibility of the evidence, but rather to the weight. It was for the jury to weigh and evaluate this evidence. This Court has previously held that photographs may be admitted where testimony concerning that which they depict would be proper. *New* v. *State* (1970), 254 Ind. 307, 259 N. E. 2d 696, 21 Ind. Dec. 720. In the case at bar, this is especially applicable concerning the color of the car in question.

Appellant also claims photographs should not have been admitted into evidence because there is no showing of when and where the pictures were taken. We see no relevancy as to when and where, in view of the fact that Mrs. Collins testified that the pictures were true and accurate representations of the vehicle in question.

Appellant also claims the automobile was illegally seized and searched. However, this claim appears to be made for the first time on appeal. Appellant does not refer to any portion of the record where such question was raised in the court below. We have nothing before us to make any determination in this regard.

Appellant next claims that he was denied due process in that the prosecution suppressed evidence of a "deal" with Wallace. The record does not disclose that there was any suppression. Wallace testified at the trial and answered questions concerning a "deal" as did Detective Ohrberg, who was the officer who had the conversation with Wallace concerning his testi-

mony at appellant's trial. We see no violation of the disclosure doctrine.

Appellant next argues that he was denied due process in that he was not offered the same "deal" as Wallace. As above pointed out, the State made no "deal" with Wallace. There was merely a representation by a questioning police officer. There is nothing in this record to indicate what appellant's opportunities may have been with regard to entering a plea of guilty. Here again we see nothing in this record on which to base any decision upon appellant's contention.

Appellant next claims his alibi evidence was unimpeached. Therefore, he claims the verdict of the jury cannot stand. Mrs. Collins had identified the appellant as one of her assailants and had fixed the time of the attack. Appellant's alibi witness testified that he was elsewhere at that time. This was conflicting evidence presented to the jury for their examination and weight. The jury is not bound to believe the testimony of an alibi witness. *Cole* v. *State* (1966), 247 Ind. 451, 215 N. E. 2d 865, 8 Ind. Dec. 227. It is obvious from the jury's verdict that they chose to believe Mrs. Collins and to disbelieve appellant's alibi witness.

Appellant next claims the trial court erred in offering on its own motion to declare a mistrial after Wallace had testified that he and appellant were co-defendants in several other cases that were still pending. The court made this offer in the absence of the jury to appellant and his counsel. Appellant declined the offer, but requested that the court admonish the jury to disregard that portion of Wallace's testimony. The court so admonished the jury. Under these circumstances, we see no error on the part of the trial court. The court afforded appellant maximum protection under the circumstances.

Appellant next claims the trial court erred in failing to declare a mistrial at the close of Wallace's second testimony in which he stated that his previous testimony for the State

was perjured. Appellant made no motion for mistrial at that time, nor do we see any reason why a mistrial should have been declared. The evidence given by Wallace in his two appearances on the witness stand was conflicting, it is true, but like all other conflicting evidence which is submitted during a trial, it fell within the province of the jury to weigh and evaluate this evidence. We see no reason for holding that the trial court should have declared a mistrial because of such conflicting evidence.

Appellant next claims the trial court erred in overruling his motion to correct errors, wherein he set out that the prosecutor had made prejudicial remarks during his final argument. This record contains neither the final argument, the objection of counsel nor the ruling of the court on any such objection. There is, therefore, nothing before this Court concerning this question. *Maynard* v. *State* (1971), 257 Ind. 336, 274 N. E. 2d 396, 27 Ind. Dec. 427.

We find no reversible error in this cause. The trial court is, therefore, affirmed.

Arterburn, C.J., Hunter and Prentice, JJ., concur; DeBruler, J., concurs in result.

NOTE.—Reported in 295 N. E. 2d 622.