ROBERT E. BALLARD *v.* STATE OF INDIANA.

[No. 1174S224. Filed November 12, 1974.]

483

*Tommy L. Strunk, McDonald & Strunk,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert E. Dwyer,* Deputy Attorney General, for appellee.

## ON PETITION TO TRANSFER

PRENTICE, J.—This case is before us upon Ballard's petition to transfer from the Court of Appeals, Second District, the decision and opinion of said Court having been filed on the 18th day of April, 1974 and reported at 309 N.E.2d 817. Rehearing was denied on June 4, 1974.

Transfer is hereby granted, and said decision of the Court of Appeals, Second District is now set aside. The decision of the trial court is affirmed with instructions to modify the petitioner's sentence.

Except with respect to Issue Eight (the matter of Petitioner's sentence), we adopt the decision and opinion of the Court of Appeals, Second District, as written by Judge Buchanan, as follows:

## "FACTS

"The facts and evidence which support Ballard's conviction are:

"On November 24, 1969, Opal Johnson (Opal) was caring for her seven-year-old granddaughter Kristy Lynn Brown (Kristy Lynn) at Opal's home while the child's mother was shopping.

"At approximately 3:30 P.M., Opal took Kristy Lynn and drove to the Brown house, intending to meet another granddaughter, Kimberly, age nine, who was due home from school. Nearing the Brown house, Opal noticed a strange car in the driveway.

"As she pulled her car into the driveway and parked facing this vehicle, Opal saw a man, who she identified at trial as Ballard, walking across the lawn from the direction of the front door of the house, carrying a stuffed owl which the Brown family kept on display inside their home. Seeing Opal drive up, Ballard ran back into the house.

"As Opal walked around to the rear of the other vehicle and noted its license number, Ballard and a companion then emerged from the house and approached Opal, explaining that they were looking for the residence of a family in the vicinity.

"Opal, her suspicions now fully aroused, told Ballard and the other man to stay where they were and, with Kristy Lynn, entered the house to telephone the Sheriff.

"Instead of remaining outside as directed, the two men followed her into the house. Testimony at trial established that the doorway of the house was equipped with a self-closing door.

"Once inside, Ballard grabbed Kristy Lynn, pointed a handgun to her head, and demanded that Opal surrender her car keys. Opal complied.

"Then, after forcing Opal and Kristy Lynn at gun-point to lie on a bed, Ballard tied their hands and feet with strips from a torn quilt. Shortly thereafter, Kimberly arrived home from school and was similarly bound—this time with an electric sweeper cord.

"The two intruders then made their escape by moving Opal's car.

"Opal freed herself and telephoned the Sheriff, who, along with Indiana State Police Detective Hart, shortly arrived on the scene to investigate.

"On February 9, 1970, Ballard was arrested and charged by a three-count affidavit with the crimes of (1) Robbery, (2) First Degree Burglary, and (3) Automobile Banditry. Ballard was arraigned on these charges in the Hamilton Circuit Court on February 10, 1970.

"On February 27, 1970, Ballard entered a plea of not guilty to all counts.

"After approximately two months' incarceration, Ballard and his attorney entered into a plea bargaining agreement with the State, pursuant to which he withdrew his plea of not guilty and entered a guilty plea to Second Degree Burglary. As its part of the bargain, the State dismissed Counts I and II (Robbery and Automobile Banditry).

"The Hamilton Court accepted Ballard's plea and on April 13, 1970, sentenced him to two to five years' imprisonment for Second Degree Burglary.

"On November 22, 1971, Ballard filed a Petition for Post-Conviction Relief, claiming that his guilty plea was not freely

given due to the coercive conditions existing in the Hamilton County Jail.

"On January 20, 1972, the Hamilton Court granted post-conviction relief, set aside Ballard's guilty plea, and ordered him held for retrial on the original, undismissed First Degree Burglary charge. Shortly after this, the State refiled the previously dismissed Robbery charge against Ballard.

"These two charges, First Degree Burglary and Robbery, were ultimately venued to the Madison Circuit Court and consolidated for jury trial.

"On July 26, 1972, the jury found Ballard guilty of Robbery and First Degree Burglary. He was sentenced to ten to twenty-five years' imprisonment for Robbery. As to the First Degree Burglary conviction, however, his sentence was limited to the sentence originally imposed for Second Degree Burglary (two to five years). Both terms of imprisonment were ordered to run concurrently, and credit was given for the period during which Ballard had been incarcerated.

"Ballard's trial gives rise to numerous allegations of error by him resulting in these issues being properly raised:

## "ISSUE ONE

"Did the trial court err in admitting irrelevant evidence consisting of the Brown family's stuffed owl and vacuum cleaner?

*"Additional Facts*

"At trial, Opal identified State's Exhibit Number One, a stuffed owl, as the one she saw being carried outside the Brown house. State's Exhibit Number Three, a vacuum cleaner, was identified by her as the one whose cord was used to tie up Kimberly. Both exhibits were admitted into evidence over objection.

*"Contentions of the Parties*

"In essence, Ballard contends that neither of these exhibits were relevant, and should have been excluded from evidence.

*"DECISION*

"CONCLUSION—It is our opinion that State's Exhibits Numbers One and Three (stuffed owl and vacuum cleaner) were relevant to the issues, and properly admitted into evidence.

"At the very least, this evidence related to Ballard's conduct surrounding the offenses charged, *i.e.*, First Degree Burglary and Robbery. A wealth of Indiana case law supports the admissibility of such evidence. *Kiefer* v. *State* (1960), 241 Ind. 176, 169 N.E.2d 723, cert. denied, 366 U.S. 914, 81 S. Ct. 1089, 6 L. Ed. 2d 238; *Anderson* v. *State* (1933), 205 Ind. 607, 186 N.E. 316; *Eckert* v. *State* (1925), 197 Ind. 412, 151 N.E. 131 (on rehearing).

"In addition, the stuffed owl, which was shown to have come from inside the house, was relevant circumstantial evidence to prove Ballard's specific criminal intent and entry. *Dixon* v. *State* (1963), 243 Ind. 654, 189 N.E.2d 715; *Marshall* v. *State* (1949), 227 Ind. 1, 83 N.E.2d 763; *Eckert* v. *State, supra.*

"As to the vacuum sweeper, Ballard fails to demonstrate how he was prejudiced by its admission. Thus, there could be no finding of reversible error, regardless of the relevancy of the exhibit. *Turner* v. *State* (1972), 259 Ind. 344, 287 N.E.2d 339.

"ISSUE TWO

"Did the trial court abuse its discretion by refusing to sustain Ballard's Motions for Mistrial based upon (1) the State's display of a handgun, and (2) questions addressed to Opal which prematurely linked Ballard to the crimes before he was identified by her?

*"Additional Facts*

"Before Opal identified Ballard as a participant in the crimes, the Prosecutor asked her this question:

" 'Would you again describe what you saw *as you saw the defendant carrying this owl?'* (Emphasis supplied.)

Defense counsel objected and moved for a mistrial, claiming that the question suggested Ballard's involvement before he had been identified by the witness. The trial court denied this Motion but sustained Ballard's objection and admonished the jury to disregard the question.

"Also, during Opal's testimony, the Prosecutor displayed a handgun in view of the jury before Opal had described the weapon used during the incident inside the house. Ballard's objection to this display was sustained by the trial court, who admonished the jury that the gun was not yet in evidence. Later, Opal described the color and size of the handgun used at the time of the incident. The State then again produced the handgun, apparently in an attempt to have Opal identify it. Before any further identification questions could be asked, Ballard renewed his objection to its display in front of the jury and moved for a mistrial, stating that no foundation had yet been laid for the handgun's identification. The trial court overruled Ballard's Motion but did warn the State not to wave the gun in front of the jury. The State never again provided or offered the handgun into evidence.

*"Contentions of the Parties*

"Ballard contends that denial of these two Motions for Mistrial prejudiced his right to a fair trial.

"The State maintains Ballard was not placed in grave peril by either the display of the handgun or the question addressed to Opal. In addition, it claims that the trial court took appropriate curative measures by admonishing the jury and the Prosecutor. As to the display of the handgun, the State argues that it should be free to attempt identification by displaying it to the witness.

*"DECISION*

"CONCLUSION—We are of the opinion that the trial court did not abuse its discretion by refusing to sustain Ballard's Motions for Mistrial.

"The decision to grant or deny a motion for mistrial lies in the sound discretion of the trial court, and is reviewable solely upon the question of abuse thereof. If a jury is admonished by the trial judge to disregard what has occurred at trial, or if other reasonable curative measures are taken, no reversible error will be found. *See, Lolla* v. *State* (1973), 260 Ind. 221, 294 N.E.2d 798; *Gregory* v. *State* (1972), 259 Ind. 295, 286 N.E.2d 666; *Sankey* v. *State* (1973), Ind. App., 301 N.E.2d 235.

"On both occasions (the question addressed to Opal and the successive gun displays) the trial court took appropriate corrective measures by admonishing the jury and warning the State. The record discloses no evidence of deliberate misconduct on the part of the State, or of Ballard being placed in a position of grave peril.

"Furthermore, there was evidence that a gun was used by Ballard to threaten Opal and Kristy Lynn, which differentiates this case from the prejudicial effect created by references to matters *dehors* the record which might constitute "evidentiary harpoons." The record discloses nothing more than a legitimate and permissible attempt by the State to have the gun identified by the witness. *Baynard* v. *State* (1972), 259 Ind. 336, 286 N.E.2d 844; *Johnson* v. *State* (1973), Ind. App., 300 N.E.2d 369.

"No abuse of discretion here.

## "ISSUE THREE

"Was Opal's in-court identification of Ballard based upon a sufficient independent factual basis regardless of any alleged irregularities as to her out-of-court identification?

*"Additional Facts*

"On February 10, 1970, Opal attended Ballard's arraignment hearing and identified Ballard to police as the same man involved in the crime. At trial, Opal positively identified Ballard as the one seen carrying the owl outside the house

and as the one who threatended her with the gun, took her keys, and tied her up. Opal further stated that she had opportunity to observe Ballard at close range for approximately fifteen minutes and could clearly see him during this period.

*"Contentions of the Parties*

"As best we can discern, Ballard contends that Opal's prior identification of Ballard at arraignment was overly suggestive and tainted her in-court identification.

"The State counters, saying that the record demonstrates a sufficient independent factual basis to support her in-court identification, regardless of any impropriety which may have attended her out-of-court identification.

*"DECISION*

"CONCLUSION—It is our opinion that the record establishes a sufficient independent basis for Opal's in-court identification of Ballard, irrespective of his claims that out-of-court identification was overly suggestive.

"There is an abundance of Indiana cases holding that reversible error will not exist if a witness's in-court identification of an accused is supportable by a factual basis which is independent of allegedly erroneous pre-trial identification procedures. *Sawyer* v. *State* (1973), 260 Ind. 597, 298 N.E.2d 440; *Lindsey* v. *State* (1973), 260 Ind. 351, 295 N.E.2d 819; *Hendrickson* v. *State* (1973), 260 Ind. 401, 295 N.E.2d 810; *Stephens* v. *State* (1973), 260 Ind. 326, 295 N.E.2d 622; *Cody* v. *State* (1972), 259 Ind. 570, 290 N.E.2d 38; *Emerson* v. *State* (1972), 259 Ind. 399, 287 N.E. 2d 867; *Dillard* v. *State* (1971), 257 Ind. 282, 274 N.E.2d 387; *Rhodes* v. *State* (1972), 154 Ind. App. 739, 290 N.E.2d 504.

"On the day of the incident, Opal had an opportunity to observe Ballard at close range for approximately fifteen minutes at the Brown house. Obviously there was sufficient independent basis to support her unequivocal identification of Ballard in court. *See, Hardin* v. *State* (1972), 153 Ind. App.

317, 287 N.E.2d 359; *Bryant* v. *State* (1972), 257 Ind. 679, 278 N.E.2d 576.

## "ISSUE FOUR

"Did the trial court erroneously allow Detective Hart to testify (1) to Opal's conduct at a photographic display, and (2) as to investigative information received from a police dispatcher . . . in violation of the hearsay rule?

*"Additional Facts*

"When Hart arrived on the scene following the incident, and was given the license number of the vehicle, he immediately radioed his dispatcher to determine its registered owner. Over objection, he testified to receiving information back from the dispatcher, but did not state the nature of the information.

"Hart also testified that Opal was shown four photographs following the crime, and that she pointed to one of them as being the culprit. Hart did not state whose photo was pointed to by Opal. Previously in the trial, Opal had testified to essentially the same facts relative to the photographic identification without objection.

*"Contentions of the Parties*

"Ballard contends that Hart's testimony relative to these matters was hearsay, and should have been excluded.

"The State argues that this evidence was not hearsay. In the alternate, it claims that its admission was harmless because (1) adequate independent evidence existed to sustain Ballard's guilt, and (2) the evidence was merely cumulative of other testimony.

*"DECISION*

"CONCLUSION—In our opinion, the trial court did not commit reversible error under the hearsay rule by admitting Hart's testimony relative to either (1) Opal's conduct at the pre-trial photographic display, or (2) his receipt of investigative information from the radio dispatcher.

"Assuming, arguendo, that Hart's testimony respecting Opal's "pointing out" one of four photos displayed to her constituted hearsay, it merely echoed Opal's prior testimony, *i.e.*, it was merely cumulative of other evidence. Error, if any, in its admission was harmless, especially in light of additional facts that Opal (the declarant) testified at trial positively identified Ballard, and was subjected to cross-examination. *See, Hall* v. *State* (1972), 259 Ind. 131, 284 N.E.2d 758 (analogous facts); *Skaggs* v. *State* (1973), 260 Ind. 180, 293 N.E.2d 781; *Wolfe* v. *State* (1928), 200 Ind. 557, 159 N.E. 545; *Carlile* v. *State* (1973), Ind. App., 303 N.E.2d 303; *Arnold* v. *State* (1973), Ind. App., 300 N.E.2d 135; *Coffey* v. *Wininger* (1973), Ind. App., 296 N.E.2d 154; Indiana Rules of Procedure, Rule TR. 61.

"As to the receipt of dispatch information—Detective Hart was neither asked, nor did he relate, the nature or content of the information received. His testimony merely related to his investigation of an alleged crime, and established only the fact that information was received, which fact was within Hart's own knowledge. As such, it was not objectionable hearsay. *Boles* v. *State* (1973), 259 Ind. 661, 291 N.E.2d 357; *Madison* v. *State* (1971), 256 Ind. 353, 269 N.E.2d 164; *Anderson* v. *State* (1959), 239 Ind. 600, 158 N.E.2d 457; *Foreman* v. *State* (1938), 214 Ind. 79, 14 N.E.2d 546.

"ISSUE FIVE

"Did the State establish the corpus delicti of Robbery and First Degree Burglary by evidence independent of Ballard's extra-judicial admissions to police?

*"Additional Facts*

"After Opal had testified, Detective Hart took the stand. During his testimony, he iterated certain incriminating statements made by Ballard in his presence following the arrest and later while Ballard was incarcerated in the Hamilton County Jail.

*"Contentions of the Parties*

"Ballard asserts the trial court erred in allowing Hart to testify to the general content of these statements because no independent proof had yet established the corpus delicti.

"The State responds that, at this stage of trial, the corpus delicti was clearly established.

*"DECISION*

"CONCLUSION—It is our opinion that evidence of Ballard's incriminating statements was accompanied by more than sufficient independent evidence establishing the corpus delicti of Robbery and First Degree Burglary.

"We first answer Ballard's erroneous claim that the corpus delicti must always *precede* evidence of a defendant's incriminating statements.

"In *Brown* v. *State* (1958), 239 Ind. 184, 154 N.E.2d 720, Chief Justice Arterburn rejected this inflexible notion:

" 'Appellant claims error on the ground that the court permitted the admissions and confessions of the appellant to be introduced in evidence before there was any independent proof made of the corpus delicti. *It is well settled the order of proof is within the sound discretion of the trial court. Sometimes, because of the nature of the testimony, it cannot be easily separated and presented in strictly logical sequence.* There appears to be no abuse of such discretion here. 8 I.L.E., Criminal Law, sec. 185, p. 281; *Shively* v. *State* (1957), 237 Ind. 17, 141 N.E.2d 921, (Cert. Den. 78 S. Ct. 273, 355 U.S. 898, 2 L. Ed. [2d] 195)' (Emphasis supplied). 239 Ind. at 189.

"In *Parker* v. *State* (1949), 228 Ind. 1, 89 N.E.2d 442 (on Rehearing), language is found to the same effect:

" 'We said that an extrajudicial confession will not be admitted in evidence and a conviction will not be upheld until and unless the *corpus delicti* has been established by clear proof, independent of the confession. . . .

" 'The literal meaning of the language which we used may, out of context, seem to be that the independent, corroborative evidence of the *corpus delicti* must precede the con-

fession. We did not have before us, however, the question of order of proof; we were considering the necessity for such proof to uphold a conviction. *The order of proof is, as in other cases, within the sound discretion of the trial court* (Anno., 127 A.L.R. 1141), but inasmuch as an extrajudicial confession may not be considered and a conviction will not be upheld without independent, corroborative evidence of the *corpus delicti*, the better practice is to adhere to the logical sequence of proof and to delay the confession, unless convincing representations be made that the independent, corroborating evidence will be forthcoming and unless substantial reason for departing from the natural order of proof be made to appear. In such event, *the trial court has the right to control the order of proof, subject only to review for harmful abuse of discretion.'* (Emphasis supplied). 228 Ind. at 11.

"Thus, either before or after introducing evidence of Ballard's statements, the State was obliged to establish "the body of the crime" charged, i.e., the fact that Robbery and Burglary were committed by someone . . . proof of which need not be beyond a reasonable doubt. *Brown* v. *State, supra; Parker* v. *State, supra; Green* v. *State* (1973), Ind. App., 304 N.E.2d 845; *Hopkins* v. *State* (1973), Ind. App., 296 N.E.2d 151; *Jones* v. *State* (1969), 253 Ind. 235, 252 N.E.2d 572.

"Regardless of order of proof the State more than adequately sustained its obligation. *Before* introducing testimony relative to Ballard's statements, Opal's testimony established a breaking and entry (through a closed screen door) into the Brown house under circumstances which legitimately permitted an inference of an intent to commit a felony (theft), (the observed act of carrying the family's stuffed owl out of the house). Furthermore, it showed that articles of value (Opal's keys) were forcibly taken from Opal. Even though this was all that was required to corroborate Ballard's statements the State went one step further by presenting Opal's testimony identifying Ballard as the perpetrator of these acts. *Green* v. *State, supra.*

## "ISSUE SIX

"Was Ballard prejudiced by a question asked him during cross-examination allegedly outside the scope of direct examination?

### "Additional Facts

"Ballard took the stand on his own behalf. On direct examination he testified that his statements to police during incarcertation were part of a plea bargaining agreement. On cross-examination, Ballard was asked if, in this statement, he had admitted going to the Brown residence on the day of the crime. Ballard's only answer to this question was that he could not remember what was said in the statement.

### "Contentions of the Parties

"Ballard contends that the trial court should have sustained his objection to this question because it exceeded the scope of direct examination.

"The State logically points out that because the general subject matter of Ballard's statement to police was referred to on direct examination, it was within the trial court's discretion to allow the State to explore the details of the statement. Furthermore, the State claims that no prejudice resulted in any event, because no damaging answer was given by Ballard.

### "DECISION

"CONCLUSION—It is our opinion that the State's question to Ballard on cross-examination relating to the content of his statements to police did not prejudically exceed the scope of direct examination.

"A long line of Indiana authority supports a cross-examiner's right to explore any and all phases of a general subject that has been opened up by a witness on direct examination. *Kelley* v. *State* (1948), 226 Ind. 148, 78 N.E.2d 547; *Stillson* v. *State* (1933), 204 Ind. 379, 184 N.E. 260; *Henry* v. *State* (1925), 196 Ind. 14, 146

N.E. 822; *Osburn* v. *State* (1905), 164 Ind. 262, 73 N.E. 601; *Diehl* v. *State* (1901), 157 Ind. 549, 62 N.E. 51.

"This rule is reflective of a sound policy in favor of vigorous and wide-ranging cross-examination of an accused who chooses to become a witness in his own behalf. *See, Sears* v. *State* (1972), 258 Ind. 561, 282 N.E.2d 807.

"Ballard opened up the general subject of his statements to police by testifying that the statements were part of plea bargaining. Having done so, the trial court acted within its discretion by permitting the State to explore the details of these statements.

"Even if the State's cross-examination did violate the "scope of direct" rule, as Ballard mistakenly claims, there could be no finding of prejudicial error. His response to the State's question merely established that he could not remember what he had told police. *Baker* v. *State* (1967), 249 Ind. 117, 231 N.E.2d 21; *Brindle* v. *Harter* (1965), 138 Ind. App. 692, 211 N.E.2d 513.

## "ISSUE SEVEN

"Did the trial court err in refusing to send written instructions to the jury during their deliberations?

### "Additional Facts

"At the close of trial, Ballard requested the trial court to permit written instructions to be sent into the jury room, which was denied.

### "Contentions of the Parties

"Ballard claims this was prejudicial error because the instructions are needed to refresh the jury's memory of the various points of law involved.

"The State answers that the trial court acted properly in denying Ballard's request.

### "DECISION

"CONCLUSION—It is our opinion that the trial court did not err in refusing to permit written instructions to accompany the jury during its deliberations.

"Our courts have repeatedly, consistently, and unequivocally held that a trial court commits no error by refusing to permit the jury to take written instructions with them to ▪ the jury room. Two recent samples are: *Martin* v. *State* (1973), 260 Ind. 490, 296 N.E.2d 793; *Woods* v. *State* (1973), Ind. App., 304 N.E.2d 817.

\* \* \*

## "ISSUE NINE

"Was the evidence sufficient to convict Ballard of Robbery and First Degree Burglary?

*"Contentions of the Parties*

"As to the Robbery conviction, Ballard contends the evidence was insufficient to prove his criminal intent, pointing to the fact that the only articles of value taken were Opal's keys. As to Burglary, he claims generally that the evidence was insufficient to show Breaking and Entering and his Intent to Commit a Felony at the time of entry.

"The State contends that the evidence was sufficient to prove all essential elements of Robbery and First Degree Burglary beyond a reasonable doubt.

*"DECISION*

*"CONCLUSION*—The evidence was sufficient to sustain Ballard's conviction of Robbery and First Degree Burglary.

"Ballard reconstructs and interprets the evidence and testimony to suit his fancy.

"Reviewing the evidence most favorable to the State together with all reasonable inferences which may be drawn therefrom, as we are bound to do, there is more than ample substantial evidence of probative value to prove beyond a reasonable doubt that Ballard was guilty of Robbery and First Degree Burglary.

*"WAIVER OF ISSUES*

"Ballard showers us with other alleged errors . . . all of which have been waived under a variety of well-known legal principles.

"Some of these issues are waived for failure to timely object at trial.[1] These are:

(1) alleged leading questions propounded by the State;
(2) alleged error in permitting Opal's testimony describing the pretrial photographic display.

"Others must be disregarded because they are predicated upon grounds substantially different than those raised by objection at trial.[2] These are:

(1) alleged error in overruling Ballard's Motion to Suppress his statements to police while he was incarcerated on the ground that jail conditions were coercive although his objection to the evidence at trial merely asserted that the State had failed to prove the corpus delicti (see ISSUE FIVE);
(2) Ballard's claim (totally at war with the record) that the State failed to prove that he was advised of his constitutional rights at the time of his arrest.

"Review of other issues is precluded because of Ballard's failure to support them with a discernible argument and cited authority in his appellate brief.[3] These relate to:

(1) introduction into evidence of certain protographic evidence;
(2) certain aspects of Opal's identification testimony."

In his petition to transfer, Ballard further asserts that the robbery conviction was without evidence of specific intent, contravening *Anderson* v. *State* (1966), 247 Ind. 215, 214 N.E. 2d 172. He contends that the taking of the car keys at gun

---

"1. See, e.g., Zupp v. State (1972), 258 Ind. 625, 283 N.E.2d 540; Pinkerton v. State (1972), 258 Ind. 610, 283 N.E.2d 376; Harrison v. State (1972), 258 Ind. 359, 281 N.E.2d 98; Johnson v. State (1972), 257 Ind. 682, 278 N.E.2d 577; Langley v. State (1971), 256 Ind. 199, 267 N.E.2d 538; Crawford v. State (1973), Ind. App., 298 N.E.2d 22.

"2. See, e.g., Jones v. State (1973), 260 Ind. 463, 296 N.E.2d 407; Cooper v. State (1972), 259 Ind. 107, 284 N.E.2d 799; Johnson v. State (1972), 258 Ind. 683, 284 N.E.2d 517; Corrao v. State (1972), 154 Ind. App. 525, 290 N.E.2d 484; Worrell v. State (1930), 91 Ind. App. 259, 171 N.E. 208."

"3. See, e.g., Loeb v. Loeb (1973), 261 Ind. 193, 301 N.E.2d 349; Young v. State (1971), 257 Ind. 173, 273 N.E.2d 285; Maynard v. State (1973), Ind. App., 301 N.E.2d 200; Conley v. Lothamer (1971), 150 Ind. App. 356, 276 N.E.2d 602; Cohen v. Burns (1971), 149 Ind. App. 604, 274 N.E.2d 283; Rule AP. 8.3(A)(7)."

point was merely incidental to the burglary, as evidenced by the petitioner's merely moving the vehicle to enable him to escape in his own. This, of course, is specious. The absence of a specific intent to commit the robbery at the time the burglary was commenced does not alter the fact that there obviously was a specific intent to take the car keys at the time they were taken. In the first place, the Court of Appeals did write upon this issue and determine that there was sufficient evidence of criminal intent to commit the robbery. Secondly, if the Court of Appeals' treatment of this issue was scant, the petitioner, nevertheless, was not prejudiced, in view of the total lack of merit. In *Anderson* v. *State, supra,* the appellant was convicted of robbery under circumstances where the assault and battery was proven but there was no evidence that anything was taken or any evidence from which it could be inferred that there was an intent to take something. The case has no application whatsoever.

## ISSUE EIGHT

It is upon this issue that we do not accept the opinion of the Court of Appeals.

To review the sequence of events: As the result of Ballard's guilty plea to Second Degree Burglary, he was sentenced to 2 to 5 years imprisonment, and the charges of Robbery and Automobile Banditry were dismissed. Subsequently, after post-conviction relief was granted setting aside his guilty plea, Ballard was found guilty by a jury of Robbery and First Degree Burglary. He was sentenced to a prison term of from 10 to 25 years for Robbery and his sentence was limited to 2 to 5 years for First Degree Burglary, being the same sentence originally imposed for Second Degree Burglary. Both terms of imprisonment were ordered to run concurrently. Note that Ballard for the first time received a sentence for Robbery, and upon his conviction for First Degree Burglary the sentence was limited to the same as he had originally received upon his plea of guilty to Second Degree Burglary.

Ballard contends that our Post-Conviction Rule 1, § 10 (sometimes erroneously referred to as Rule PC-1[j]) precludes his being given a sentence in excess of the one first imposed.

The State contends that Ballard's success in the post-conviction proceedings rescinded the plea bargain and returned Ballard and the State to the status they were in immediately prior thereto and that the State, therefore, had the right to initiate the robbery charge and subject Ballard to the risk of the greater sentence therefor.

## DECISION

Post-Conviction Rule 1, Section 10 is as follows:

"(a) If prosecution is initiated against a petitioner who has successfully sought relief under this rule and a conviction is subsequently obtained, or

"(b) if a sentence has been set aside pursuant to this rule and the successful petitioner is to be resentenced, then the sentencing court shall not impose a more severe penalty than that originally imposed, and the court shall give credit for time served."

In its opinion upon this issue, the Court of Appeals considered only subsection (b) of the rule and logically concluded therefrom that it applied only to resentencing for the same offense and did not prescribe assessment of a greater sentence upon conviction of a different offense. Such a decision, however, does not reckon with subscription (a) of the rule. Taken as a whole, Section 10 proscribes penalties more severe than those originally imposed when either (a) prosecution is initiated against a successful petitioner or (b) a successful petitioner is to be resentenced. Subsection (b) is applicable to those cases where only the original sentence is set aside in the post-conviction proceedings. Subsection (a) is applicable to those cases resulting in a trial of the guilt issue. In either event, however, a penalty more severe than the one originally imposed is proscribed. The rule goes further than the decision in *North Carolina* v. *Pearce* (1969),

395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656, which permits the imposition of a more severe penalty after retrial, conditioned upon the record demonstrated a bona fide reason therefor.

An analogous factual situation was recently considered by the Seventh Circuit Court of Appeals in *United States* v. *McCarthy* (1971), 445 F.2d 587. In that case, the court concluded that, except for the running of the statute of limitations, the Government would have been entitled to reinstate the dismissed charges and said at page 591:

"* * * When he filed his appeal, * * *, he in effect rescinded his bargain with the Government.

"We have no doubt that the Government then had the right to make the rescission complete and promptly to reinstate the dismissed counts."

We cannot dispute the logic of the foregoing statement; however, that court was not required to reckon with our Post-Conviction Rule 1, § 10, the wisdom of which may be questioned by some, in view of the results in this particular case. It is obvious here that by a combination of plea bargaining and invocation of the Post-Conviction Rule, the defendant manipulated the State into a position of impotence. He succeeded, prior to a trial upon the issue of guilt, in placing a ceiling upon the sentence he could receive— a ceiling greatly lowered from the one fixed by statute for the offense he committed. It is inevitable in an imperfect system, that those not justly entitled may sometimes have the benefit of rules designed to protect the rights of the innocent and the abused.

The intent of Section 10 is to assure that the avenue provided by the sections of the rule preceding it may be freely traversed. This does not come to pass if the would-be petitioner, in order to utilize the rule, must pay the toll of risking a penalty more severe than the one he is presently under. That it has, in this case, worked an injustice to the State of Indiana is unfortunate. It does, however, demonstrate the need for prosecutors and trial judges to

satisfy themselves, before accepting a guilty plea induced by plea bargaining—a highly questionable practice at its best—that the penalty assessed satisfies the interests of the State for all of the defendant's crimes, of which the State has pertinent information and opportunity to charge, flowing from the occurrences that gave rise to the charges. This is in keeping with our view of the responsibility of the State recently expressed by Justice Hunter in *Johnson* v. *State* (1974), 262 Ind. 183, 313 N.E.2d 535, 538. In the absence of compelling circumstances, the State should not accept pleas of guilty to relatively minor offenses in satisfaction of charges of serious crimes supported by clear and convincing evidence of guilt. Mere convenience to the State of avoiding a trial is not such a compelling circumstance.

The judgment of the trial court, upon the issue of guilt, is affirmed. The sentence imposed is vacated, and the cause is remanded to the trial court with instructions to resentence the petitioner, Robert E. Ballard, to a term of imprisonment of from two (2) to five (5) years upon the count of First Degree Burglary and a like term upon the count of Robbery, said terms to run concurrently and credit to be given for the period during which Ballard has been incarcerated.

DeBruler and Hunter, JJ., concur.

Arterburn, C.J., concurs in result with opinion.

Givan, J., dissents with opinion.

### CONCURRING OPINION

ARTERBURN, C.J.—I concur in the result of this opinion on the basis that the plea bargain in this case was tainted by duress as shown by the finding of the trial court. I do not think that post-conviction remedies should be applicable to good faith plea bargaining cases, and I believe our rule should be changed accordingly. Of course, if the plea bargain is based on duress, fraud or misrepresentation it should be set aside, but not otherwise.

### Dissenting Opinion

GIVAN, J.—I respectfully dissent from the majority opinion in this case. It is my position that Judge Buchanan, in speaking for the Court of Appeals, has correctly analyzed Post-Conviction Rule 1, Section 10, and has made proper application of the rule to the facts in the case at bar.

The Court of Appeals was correct in holding that the appellant was properly sentenced to a term of ten (10) to twenty-five (25) years for robbery and two (2) to five (5) years for burglary.

Transfer should be denied in this case.

NOTE.—Reported at 318 N.E.2d 798.