**Christopher C. HEDRICK, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 1080S398.**

Supreme Court of Indiana.

Feb. 10, 1982.

**1152**

Richard M. Salb, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

On November 13, 1979, appellant was charged with Murder and Criminal Deviate Conduct. He pleaded guilty to Criminal Deviate Conduct and was convicted of Voluntary Manslaughter after a jury trial. Appellant was sentenced to a term of twenty (20) years for Voluntary Manslaughter and a term of twenty (20) years for Criminal Deviate Conduct, said sentences to run consecutively. He appeals.

This case involves the death of eleven-month-old Latasha Booher. Theresa Hedrick, appellant's wife, and mother of the victim, testified that after she moved in with appellant Hedrick he became hostile toward the child. Hedrick was alone with Latasha at the time she sustained a head injury in October, 1979. On November 6, 1979, Latasha got out of bed and was crying. Theresa observed Hedrick pick up the baby, shake her, and call her "a spoiled brat and a little bitch." He again shook the baby and hurled her onto the mattress of her bed. The baby struck her head on the wall and was injured, but Hedrick refused to call for aid or to take the baby to the hospital. The child was taken to the hospital later, and Hedrick instructed Theresa to tell the hospital authorities that Latasha had fallen out of bed. Hedrick admitted that he was angry with the child, that he shook her hard, forcefully put her on the mattress, and that her head struck the wall. He also admitted to having sexually abused the child when he was angry with her a few days prior to the time the fatal injuries were suffered.

When Latasha was brought to the hospital on November 6, she had bruises all over her body and severe internal head injuries. Her skull was fractured. The fatal injury was determined to be an acute subdural hematoma. Dr. Aguilar, the pathologist who performed the autopsy, stated that there was no evidence of chronic subdural hematoma. He stated that the cause of

death was a blunt force trauma to the head and that this occurred only a few days before Latasha's death on November 11, 1979.

Defendant claimed his rough "disciplinary actions" were due to the manner in which he had been disciplined as a child and presented medical witnesses to demonstrate that the baby's death was due to the prior skull fracture and not due to his actions on November 6, 1979.

Appellant claims the court erred in denying his motion to dismiss, in refusing an instruction, in admitting exhibits and testimony, and in giving instructions. He also claims that the verdict and sentencing were in error.

## I.

Appellant claims that the court erred in denying his motion to dismiss. Appellant's motion to dismiss stated that knowingly or intentionally killing another human being was an essential element of murder, and that a determination of the amount of force used by the defendant was material to determining whether the homicide was "knowingly or intentionally" committed. It also stated that the mechanism of death was a subdural hematoma and that defendant believed that the existence of a previous subdural hematoma would prove that a lesser amount of force was needed in effecting the death of the victim, thus mitigating the "knowingly or intentionally" element. He then claimed that the State destroyed the only evidence that he could use in establishing the existence of the previous subdural hematoma—the dura matter or dura. The motion further stated that the pathologist, Josefino Aguilar, did not preserve the dura for microscopic examination and that the unavailability of the dura would deny him a fair trial and due process. Defendant's Motion to Dismiss was overruled.

■ Appellant, on appeal, claims that the State, through its agents, destroyed material exculpatory evidence when the pathologist who performed the autopsy on Latasha Booher failed to make microscopic slides of the victim's dura. Appellant attempted to raise this claimed error only in the above described Motion to Dismiss. Defendant did not object to the testimony by various medical personnel regarding the cause of death of the child, including the testimony of the pathologist who performed the autopsy. Here appellant is challenging the sufficiency of the evidence in claiming that the alleged exculpatory evidence would support his contention that the homicide was not committed "knowingly or intentionally." An indictment or information may not be questioned on the ground of insufficient evidence. The sufficiency of the evidence is decided at trial. *Schutz v. State*, (1981) Ind., 413 N.E.2d 913, 916; *Hubbard v. State*, (1974) 262 Ind. 176, 313 N.E.2d 346.

■ In addition, appellant is arguing that the existence of a prior subdural hematoma would be critically relevant as to whether or not the appellant acted intentionally and knowingly. We disagree. Testimony was heard from the receiving nurse, and pediatrician John Gaebler, the treating physician, who saw Latasha in the emergency room, Dr. Manders, who performed surgery, and from Dr. Aguilar, who performed the autopsy. There was testimony heard that Latasha had been injured before, in October, and ample testimony that the injury of November 6 was the cause of death. Dr. Aguilar was questioned about the reasons he did not do microscopic examinations. He replied that under the contract between Wishard Memorial Hospital and the Marion County Coroner there is no money budgeted for microscopic examinations. When asked if microscopic examinations were necessary to be absolutely certain as to the cause of death he replied that he was certain as to the cause of death. Dr. Manders stated that microscopic slides were not necessary to determine whether the injury was acute or chronic and that this situation was absolutely acute. There was sufficient evidence presented regarding the cause of death and the previous injury to show that great force was required to cause the injury of November 6, regardless of any previous injuries and that the November 6 injury caused the death of Latasha Booher.

## II.

Appellant next claims that the court erred in refusing his tendered Instruction No. 1 which read as follows:

"If you should find from the evidence that any agent, employee or representative of the State of Indiana or County of Marion destroyed or failed to preserve evidence or potential evidence that would have been relevant to defendant's guilt or innocence, then you shall presume that if such evidence were available it would have been favorable to the defendant."

He argues that this is a correct statement of the law and was not covered by any of the other instructions given by the court.

■ Instructions such as defendant's tendered instruction No. 1 are not favored in Indiana. *See Bruce v. State*, (1978) 268 Ind. 180, 375 N.E.2d 1042, 1084, U.S. *cert. den.* 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed.2d 662; *Jay v. State*, (1965) 246 Ind. 534, 206 N.E.2d 128, 130, *reh. den.* 207 N.E.2d 501. As was found in Issue I, *supra*, the evidence which appellant claims was destroyed was not material to the issues before the jury. An instruction calling for an adverse inference to be drawn from the failure to produce evidence is appropriate only where the evidence withheld is material to the trial issues, and not cumulative. *Bruce, supra*, 375 N.E.2d 1042, 1084. There was no error in refusing this instruction.

## III.

■ Appellant next argues that a mistrial should have been granted when it was learned that a member of the jury saw the defendant in a lockup during the noon recess of the trial and commented on it to other jurors. Appellant has not demonstrated any actual prejudice to his cause from this incident. The trial court promptly admonished the jury to disregard any information regarding the defendant's whereabouts. This was an inadvertent incident that does not require a mistrial. *Misenheimer v. State*, (1978) 268 Ind. 274, 374 N.E.2d 523, 529.

## IV.

■ Appellant next claims that the court erred in admitting State's Exhibits 1, 2, 3, and 4, which were photographs of the deceased, Latasha Booher, when she was in the hospital. The trial court did not admit exhibits 1, 2, 3, and 4. The State offered only Exhibits 1 and 3, which were admitted. The exhibits were offered during the State's case-in-chief and the trial court sustained Defendant's objection to them. Defendant objected that the photographs were irrelevant, immaterial and prejudicial, since they did not depict the child's condition on the day she was admitted to the hospital. We will not speculate as to why the trial court sustained the objection at that time. However, at the time the exhibits were offered and admitted during the cross-examination of Dr. Pless, the photographs were relevant. Dr. Pless had testified as to his opinion regarding the injuries sustained by Latasha Booher and his opinion differed from that of the State's witnesses. Dr. Pless further stated that State's Exhibits 1 and 3 were considered by him in reaching his opinion. Dr. Pless stated that he had compared the exhibits with Dr. Aguilar's autopsy report and then admitted that the injuries depicted in the exhibits were consistent with Dr. Aguilar's findings. These photographs accurately depicted Latasha Booher prior to autopsy as established by State's witness Alda Kaiser. The trial court did not abuse its discretion in admitting these exhibits.

## V.

■ Appellant also claims the trial court erred in admitting State's Exhibit No. 6. He argues that the State failed to produce the photograph for his inspection and did not comply with the trial court's discovery order. There is a dispute as to whether or not the discovery order was, in fact, violated. The deputy prosecutor stated that the exhibit had been shown to defense counsel. Nevertheless, the proper remedy would have been for the defendant to have requested a continuance if he believed it necessary. Appellant presents no argument

nor does he demonstrate how he was prejudiced by the admission of this photograph. Appellant's failure to request a continuance constitutes a waiver of any error on this issue. *Miller v. State*, (1980) Ind., 405 N.E.2d 909, 911; *Richardson v. State*, (1979) Ind., 388 N.E.2d 488, 490.

## VI.

Appellant next argues that it was error to admit State's Exhibit 7 into evidence because it was inflammatory and prejudicial. State's Exhibit 7 was properly identified by Dr. Gaebler as accurately depicting Latasha Booher in the intensive care unit at St. Francis Hospital following her surgery. Dr. Gaebler also testified as to his opinion regarding the bruises depicted in the photograph. He identified the medical apparatus and markings which were the result of surgery or other medical treatment. It is well settled that a trial court has broad discretion in ruling on the admissibility of photographic evidence. The relevancy of photographs is determined by whether or not the photographs evidence anything that a witness would be permitted to testify to if identified and verified by the witness. *Price v. State*, (1980) Ind., 412 N.E.2d 783, 786; *James v. State*, (1980) Ind., 411 N.E.2d 618, 620; and *Brandon v. State*, (1978) 268 Ind. 150, 155, 374 N.E.2d 504, 507.

This photograph was a true and accurate representation of what it was intended to portray and was relevant. The trial court did not abuse its discretion in admitting this exhibit. *James, supra*, 411 N.E.2d 618, 620–21.

## VII.

Appellant next argues that the trial court erred in allowing State's witness, Alda Kaiser, a police officer, to testify concerning the condition of Latasha after surgery, and that this testimony gave undue weight to State's Exhibit 7 discussed in Issue VI, *supra*. Appellant claims such testimony and the exhibit were irrelevant, immaterial, highly inflammatory and prejudicial and also comments that such testimony is cumulative and is used only to emphasize Dr. John Gaebler's testimony of Latasha Booher's condition after surgery.

No objection was made to the testimony of Alda Kaiser on the ground that it would give undue weight to State's Exhibit No. 7. Therefore this issue is waived. *Ballard v. State*, (1974) 262 Ind. 482, 318 N.E.2d 798, 808. Alda Kaiser's testimony was her personal observation of the child. She testified as to the injuries sustained prior to hospitalization and as to those marks on the child which were attempts at medical treatment. Such testimony was helpful to the jury and was relevant. In addition, Dr. Gaebler testified concerning the surgery and post-operative treatment of the child. Therefore, even if the testimony of Alda Kaiser should not have been permitted, the fact that it was merely cumulative of other properly admitted evidence demonstrates that he was not prejudiced by Kaiser's testimony. The erroneous admission of evidence is harmless if it is only cumulative of other undisputed and properly admitted evidence. *Jackson v. State*, (1980) Ind., 402 N.E.2d 947, 951; *Ballard v. State*, (1974) 262 Ind. 482, 492, 318 N.E.2d 798.

## VIII.

Appellant next alleges that the court denied appellant a fair trial by allowing State's witnesses, Alda Kaiser and Thomas Wininger, Indianapolis police officers, to testify concerning vaginal and anal injuries to the child. Appellant claims that the vaginal and anal injuries sustained by Latasha Booher were irrelevant and immaterial to the cause of death and that these witnesses should not have been allowed to give opinion testimony. He also claimed that such testimony was inflammatory and prejudicial. Defendant previously had pleaded guilty to Criminal Deviate Conduct and this plea was taken under advisement by the trial court. At trial defendant objected to Alda Kaiser's testimony only on the ground that it had nothing to do with the cause of death. A lay witness may give an opinion, and the admission of such opin-

ion evidence is within the discretion of the trial court and will be reversed only for an abuse of discretion. *Coonan v. State*, (1978) 269 Ind. 578, 382 N.E.2d 157, 161; *Ball v. State*, (1980) Ind.App., 406 N.E.2d 305, 310. Alda Kaiser testified as to her personal observations. Officer Wininger's testimony did not include reference to the child's injuries, rather through his testimony Defendant's taped statement, in which he admitted his acts, was played to the jury. Such evidence of the defendant's animosity toward the child and his intent to injure the child prior to the fatal injuries being inflicted was relevant. There is no error on this issue.

### IX.

■ Appellant next argues that the trial court erred in giving Instruction No. 32 which read as follows:

"As stated in a previous instruction under the information filed in this case, the defendant may be found guilty of Murder, Voluntary Manslaughter, or Involuntary Manslaughter.

If, under the law and the evidence, you shall find him guilty and have reasonable doubt as to whether he is guilty of Murder or Voluntary Manslaughter, you should find him guilty of the lesser offense, namely Voluntary Manslaughter.

And if you find the defendant guilty and have reasonable doubt as to whether he is guilty of voluntary Manslaughter or Involuntary Manslaughter, you should find him guilty of the lesser offense, namely, Involuntary Manslaughter.

And if you shall determine that the defendant is not guilty of any of the offenses charged in or covered by the information, then he should be found not guilty."

Appellant claims that this instruction was confusing to the jury. However, he fails to show how the instruction is confusing or how he has been harmed. This issue has been waived. *Guardiola v. State*, (1978) 268 Ind. 404, 375 N.E.2d 1105, 1107. Appellant also failed to tender an instruction which covered this area. This constitutes a waiv-

er of the claimed error. *Begley v. State*, (1981) Ind., 416 N.E.2d 824, 827; *See also Raspberry v. State*, (1981) Ind., 417 N.E.2d 913, 915.

### X.

■ Appellant next claims that the trial court erred by allowing the jury to render a verdict of voluntary manslaughter since there was no evidence of "sudden heat." It is the State's position that the evidence presented at defendant's trial was sufficient to sustain his conviction for voluntary manslaughter and would sustain a verdict of guilty on a charge of murder.

In considering only the evidence and the reasonable inferences therefrom which support the verdict, it is clear that the jury was presented with evidence that appellant had become hostile toward the child and often hit the child. Testimony of a co-worker of Hedrick also showed appellant's animosity toward Latasha. As was set out previously, testimony was heard that Latasha had sustained a head injury prior to November 6, 1979, when alone with appellant. On November 6, 1979, Latasha had bruises and sustained head injuries when she was hurled by appellant and her head struck the wall. Hedrick refused to call for help and told the mother to lie about the injury. Appellant later testified as to his conduct and admitted abusing and injuring the child while angry.

Medical personnel testified in detail that the severe internal head injuries would take great force to produce and that the injury suffered by Latasha in October was not related to the November injury. The operating surgeon also testified that the severe blow to the head occurred within hours of the time he first observed the child in November. The evidence presented by the State demonstrated a pattern of abuse and that appellant inflicted the fatal injuries. Given this evidence, the jury could have inferred that appellant knowingly or intentionally killed the child and might have concluded that appellant became angry with the child and that this anger was sufficient to constitute "sudden heat" under

the circumstances. As we stated in *Love v. State*, (1977) 267 Ind. 302, 369 N.E.2d 1073, 1075: "[A]ll that is required to reduce a homicide from murder to voluntary manslaughter is sufficient provocation to excite in the mind of the defendant such emotions as either anger, rage, sudden resentment, or terror as may be sufficient to obscure the reason of an ordinary man, and to prevent deliberation and premeditation, to exclude malice, and to render the defendant incapable of cool reflection." *Hardin v. State*, (1980) Ind., 404 N.E.2d 1354. The jury could have found that the evidence presented here met that standard. There is no error on this issue.

## XI.

Appellant finally claims that the sentence imposed is excessive and unauthorized by statute. He is specifically complaining that the court used the same factors to increase the penalties as were used to impose consecutive sentences. Appellant was sentenced to twenty (20) years on Count I and twenty (20) years on Count II, said sentences to be served consecutively. The court found aggravating circumstances and no mitigating factors. Appellant argues that the trial court erred in using the same aggravating factors to enhance the sentences for the separate offenses. There is no merit to this argument. This argument has previously been considered by this Court. In *Inman v. State*, (1979) Ind., 393 N.E.2d 767, the accused complained of the court using the factors listed in Ind.Code § 35–4.1–4–7 to increase the standard penalties as well as to impose consecutive sentences. We stated: "We do not interpret the statutory language to mean that the alternatives are mutually exclusive. The Court may, upon consideration of relevant facts and information, increase the standard penalties, impose consecutive sentences or both." *Inman v. State*, (1979) Ind., 393 N.E.2d 767, 772. The trial court did not err in using the same criteria to increase the sentence for both counts and to impose consecutive sentences. *Warfield v. State*, (1981) Ind., 417 N.E.2d 304, 309.

Judgment affirmed.

All Justices concur.